ALBANY,
Jan. 1813.

EXECUTORS OF
MOFFAT
v.
STRONG.

A. by his last will, after giving specific parts of his real and personal estate to each of his five sons, by name, devised as follows: "After the above-mentioned articles are taken out of my moveable estate, let the remainder be valued by indifferent men, agreed upon for that purpose, and then to be divided as my heirs can agree among themselves; and if any of my sons as aforesaid should die, without lawful issue, then let his or their part or parts, be equally divided among the survivors, unless it should happen that he or they so dying, should leave a wife behind, in which case, she shall take back what she brought with her, and 100l. besides, and only the remainder shall be divided as aforesaid."

## THE EXECUTORS OF MOFFAT *against* STRONG.

THIS was an action of covenant, brought to recover 250 dollars, with the interest, on a sealed note, executed by the defendant, to the testator, in his lifetime. The defendant pleaded the general issue. The cause was tried at the *Orange* circuit, in *September*, 1811, before the *Chief Justice*, and a verdict was taken for the plaintiffs, by consent, subject to the opinion of the court, on the following case:

*Moffat*, the testator, on the 12th *October*, 1807, made his last will and testament, and appointed the plaintiffs his executors. The testator afterwards died, leaving five sons, *Nathaniel*, *Samuel*, *David*, *Joseph* and *John*, his heirs at law.

By his will, the testator gave specific parts of his real and personal estate to each of his sons, by name, in separate clauses; and then added the following clause:

"After the above-mentioned articles are taken out of my moveable estate, let the *remainder* be valued by indifferent men agreed upon for that purpose, and then to be divided as my heirs can agree among themselves: and if any of my sons aforesaid should die *without lawful issue*, then let his or their part or parts be divided equally among the *survivors*, unless it should happen that he or they so dying, should leave a wife behind, in which case, she shall take back what she brought with her, and 100l. besides, and only the remainder shall be divided as aforesaid."

Soon after the death of the testator, in 1809, the executors divided the personal property among the heirs, by mutual agreement, pursuant to the will; and delivered to *John*, one of the heirs and devisees, a sealed note for 250 dollars, executed by B. to the testator, in his lifetime, but without discriminating whether it was paid to him, as part of his specific legacy, or of the *remainder* so directed to be divided, and which would not have given to each of the sons more than 60 dollars.

*John* continued in possession of the *note* so delivered to him, until 1811, when he assigned it to G., who had attended him in his last sickness, and who had lived in the family of the testator, and was well acquainted with the will, for her services, as he said, and a few days after he died, *unmarried and without lawful issue*. His surviving brothers took the note in question, ▓▓other articles, out of a trunk belonging to *John*, claiming them, by virtue of the devise ▓▓ ir father's will. G. who also claimed the note, by virtue of the assignment from *John*▓▓rds, and after a suit had been brought on it against B. by the executors of A., executed a *release* of it, to B.; it was *held* that the limitation over extended to all the devises and bequests, and was good by way of *executory devise*; and that it was an unalienable interest which could not be defeated by the devisee, who had only the *use*, and not an absolute property in the thing so devised; that the note, in this case, not having been collected, or converted into money, in the lifetime of *John*, but remaining in his possession, passed to the *survivors*, like any specific moveable of which he died possessed; that G. took the assignment subject to all the rights under the will, and the release executed by her was in fraud of the persons entitled in remainder, and void; and ▓▓s taken by B. at his peril; both the assignment and release being made in violation of a vested right.

The testator died in 1809. The executors, soon afterwards, by a mutual agreement among all the heirs, divided the personal property among them, pursuant to the will; and the note in question was delivered by the executors to *John*, as part of the sum due to him by virtue of his father's will, but without discriminating whether it was paid as part of the specific legacy or of the remainder of the estate, directed by the testator, to be divided among his *heirs*. The remainder so directed to be divided was not sufficient to pay more than 60 dollars to each of the sons. *John* continued in possession of the note, so delivered to him, until *March*, 1811, when he assigned it to *Sarah C. Gregg*, and a few days thereafter died, unmarried and without lawful issue. He was sick for a long time before his death, and was attended by *Sarah C. Gregg*, and gave her the note in question, as he said at the time, as a compensation for her services. She had lived for many years in the family of the testator, and was well acquainted with the will of the testator, before she took the assignment of the note. *Samuel, David* and *Joseph*, soon after the death of *John*, entered the room where he died, and broke open a trunk which belonged to their brother *John*, in his lifetime, and took the note in question, together with other notes and papers, which they claimed by virtue of the devise over in the will of their father. *Sarah C. Gregg* also claimed the note, by virtue of the assignment to her; and after the commencement of the present suit, executed a *release* to the defendant, of the note, which release was, by consent, admitted to be given in evidence at the trial, in the same manner as if it had been pleaded *puis darrein continuance*.

*Story* and *P. Ruggles*, for the plaintiffs, cited 1 *P. Wms. 534.* 500. 551. 3 *P. Wms.* 258. 1 *Term Rep.* 593. 3 *Term Rep.* 143. 7 *Term Rep.* 555. 589. 1 *Johns. Rep.* 440. 3 *Johns. Rep.* 292. 5 *Mass. T. Rep.* 500.

*J. Duer*, contra, cited 9 *Ves.* 152. 7 *Ves.* 526. 2 *Fearne*, 210. and note by *Powell. Amb.* 262. 2 *P. Wms.* 230. 2 *Ves.* jun. 639. 4 *Ves.* 150. 5 *Ves.* 199. 3 *P. Wms.* 113.

KENT, Ch. J. delivered the opinion of the court. Whether the plaintiffs are entitled to recover, turns wholly upon the construction to be given to the clause in the will of the testator. After giving certain specific parts of his real and personal

ALBANY,
Jan. 1813.

EXECUTORS OF
MOFFAT
v.
STRONG.

estate to each of his sons, and directing the remainder of his moveable estate to be divided among his heirs, the testator adds this provision; " and if any of my sons aforesaid should die *without lawful issue,* then let his or their part or parts be divided equally among the *survivors,* unless it should happen that he or they so dying should *leave a wife behind,* in which case she shall take back what she brought with her, and 100*l.* besides, and only the remainder shall be divided as aforesaid."

The plaintiffs claim from the defendant the amount of the note in question, as belonging to the surviving sons, under the above executory devise. The note had been delivered to *John,* one of the sons, as part of his proportion of the estate under the will, and he had, in his lifetime, assigned it over to *Sarah C. Gregg,* who has since released the defendant from it. The devise to *John* consisted of land, specific chattels, and money, or the proceeds of the sale of a farm, and also his share of the *residuum* of the moveable estate; the note was delivered to him by the executors on account, or in part of his share of the estate, and he died without lawful issue.

The question is, whether the limitation in this case, as applicable to this particular subject, be good.

There does not appear to be any sufficient reason for confining the executory bequest (assuming it to be valid) to the *residuum* of the moveable estate left to be divided by the heirs. The words of it do not, by any easy or natural construction, confine the limitation over to that part of the will. The provision is general in its language and object, and extends to all the previous devises to the son or sons who should so die; and when we consider the latter clause respecting the wife, it appears to have been the testator's intention, that the limitation should reach to all the devises and bequests, as probably the only means by which the wife might receive her stipulated provision.

The greatest difficulty that arises, in starting the main point for any purpose of consideration, is to avoid being overwhelmed and confounded by the multitude of cases. Lord *Thurlow* said, there were fifty-seven cases on the point, and we know that they have greatly increased since. The general principle is, that where there is an express limitation of a chattel by words, which, if applied to a freehold would create an estate-tail, the whole interest vests absolutely in the first taker, and the limitation over is too remote. The reason of this very artificial rule is best given by

Lord Chancellor *Thurlow*, in the cases of *The Attorney-General*
v. *Bayley* and of *Knight* v. *Ellis :* (2 *Bro.* 553. 570.) "If a
man gives an estate in general to *A.* for life, and adds but *if he*
*dies without issue, I then give it to B., B.* has no immediate
gift, but only a contingent interest, upon *A.'s* dying without issue,
and it would counteract the intention of the testator if *B.* took it
immediately upon the death of *A.* Therefore, *ex necessitate rei,*
these words operate to an enlargement of the estate for life, for
otherwise the issue of *A.* would not take at all, and *B.* would take
the whole. It is necessary that *A.* should take an estate which
must devolve upon his issue, and upon that ground his estate is
extended beyond an estate for life ; and in a freehold interest it
is deemed an estate-tail, and in a chattel interest, an absolute pro-
perty. *A.* must be considered as taking for the benefit of his
issue as well as of himself, and he must so take as that the pro-
perty might be transmissible, through him, to his issue ; and this
can only be by his being considered as taking an estate-tail in the
one case, and the whole interest in the other."

We shall meet with an ample illustration and proof of this doctrine,
in practice, by looking into the cases on limitations of chattel inte-
rests by will. In *Beauclerk* v. *Dormer,* (2 *Atk.* 308.) and in
*Brigge* v. *Bensley,* (1 *Bro.* 188.) it was decided, that the words
*dying without issue* do, in the case of a chattel as well as of a free-
hold estate devised by will, mean an indefinite failure of issue, and
that they were not to be confined to issue *living at the time of the
death.* In both these cases, the limitation over of the personal
estate by the above words, was held to be too remote, and, conse-
quently, void. Those cases are supported by many others of like
import ; (*Saltern* v. *Saltern,* 2 *Atk.* 376. *Everest* v. *Gill,* 1 *Ves.*
jun. 286. *Chandless* v. *Price,* 3 *Ves.* 89. *Rawlins* v. *Gold-
frest,* 5 *Ves.* 440.) and they are selected as leading cases, and as
being, in point of authority, decisive as to the legal effect of those
precise words in the will before us, but they do not apply to nu-
merous other expressions which may appear, at first sight, to be of
synonymous meaning. And it ought to be observed, that the courts
have generally shown a disposition and leaning towards giving
effect, if possible, to these testamentary limitations, and have
laid hold of any words that would admit of a construction to
take the case out of the general rule, so as to give effect to the
executory devise. The words, *leaving issue* have, in many cases,
been deemed sufficient to change the operation of the will, and to

show that the limitation was meant to be confined to issue *living* at the death of the first taker, and so valid, as an executory bequest. The words, *no issue behind him,* and the words, *in default of issue, then, after his decease, to B.,* have been also considered as of decisive weight in support of this construction.

It has also been said, that there was a distinction as to the words *dying without issue,* between a devise of real and personal estate; and that while in the former they were construed to mean a general or indefinite failure of issue, they meant, in the latter, issue at the time of his death, and so the limitation was not too remote, but good, in the latter case, and void in the former. This distinction was made by Lord *Macclesfield,* in *Forth* v. *Chapman,* (1 *P. Wms.* 663.) and in *Playdell* v. *Playdell,* (1 *P. Wms.* 748.) and exploded by Lord *Hardwicke,* in *Beauclerck* v. *Dormer,* (2 *Atk.* 308.) though expressly admitted by him in other cases. (3 *Atk.* 208. 2 *Ves.* 180.) The same distinction was supported by Lord *Mansfield,* in *Denn* v. *Shenton,* (*Cowp.* 410.) and exploded by Lord *Kenyon,* in *Potter* v. *Bradley,* (3 *Term Rep.* 143.) and *Roe* v. *Jeffery,* (7 *Term Rep.* 595.) and, lastly, was restored as it originally stood, in *Forth* v. *Chapman,* by Lord *Eldon,* in *Crooke* v. *De Vandes.* (9 *Ves.* 197.) After such a series of contradictory opinions, among such distinguished judges, it becomes rather hazardous to rest this point on mere authority; and without undertaking, for the present, to avail ourselves of this distinction, or to decide between this alternation of opinion, we proceed to consider the construction and effect of some other expressions in the will.

If the limitation rested solely on the words, *dying without issue,* we have seen that it would fail; but the will proceeds and gives the part of the son so dying without issue to the *survivors,* except the portion which was to go to the wife. The term *survivors* will be found to rescue the limitation from the operation of the general principle, and to bring it within the reach of other cases which have adjudged *that* expression to be the cause of a different construction; and for the reason, that it could not have been intended that the survivor was to take only after an indefinite failure of issue, as that event might not happen until long after the death of all the survivors.

In *Hughes* v. *Sayer,* (1 *P. Wms.* 584.) there was a devise of personal estate, and the surplus of it was given to two nephews, and upon either *dying without children, then to the survivor.*

ALBANY,
Jan. 1813.

EXECUTORS OF
MOFFAT
v.
STRONG.

The master of the rolls held the devise over good, for the devise must be taken to mean children living *at the death of the party*, and not a general failure of issue, because the immediate limitation over was to the survivor. The same construction was given in *Nicholls* v. *Skinner*, (*Prec. in Chanc.* 528.) which was a devise of bank shares to four children, and if any should die *without issue*, his or their share to go to the *survivors*. It was held that as the limitation was to the survivors, it could not be intended a dying without issue generally, which would make it void; but a dying without issue, in such a manner as that the survivors or survivor might take it, which must be during their lives, and, consequently, good. This last case may be considered as precisely in point; and as it was a devise of bank stock, it meets another objection in the case, as to the nature of the property which is sought to be made the subject of the limitation.

The intent of the testator, according to the settled legal construction of terms, appears, then, in this case, to have been to provide for the surviving sons, on the contingency of either of the sons dying and leaving no issue *at his death;* and as this intention is consistent with the rules of law, the limitation over is good by way of executory devise.

The limitation being valid, the general rule is, that the devisee has not power to defeat it. Every executory devise is, as far as it goes, a perpetuity; that is, it is an unalienable interest. The devisee has only the use, and not an absolute interest in the personal property devised. The rule holds good where the bequest is of specific chattels, as books, furniture, stock, &c. Thus in *Hastings* v. *Douglass*, (*Cro. Car.* 343.) trover was held to lie by the person entitled in remainder against a third person who had, after the widowhood had ceased, converted certain jewels, devised to *B.* during her life or widowhood. There may be cases in which the persons in remainder cannot, and ought not, to pursue personal property in the hands of a *bona fide* holder, as a purchaser or creditor under the first legatee. The case of negotiable paper and of money bequeathed will be of that kind; and there may be other cases where the interests of commerce and of credit require that the purchaser should be protected. The court of chancery may, perhaps, in many cases, require the legatee to give security before he can demand the property of the executor, and may even restrain any meditated sale. Lord

*Thurlow* said, in the case of *Foley* v. *Burnell*, (1 *Bro. C. C.* 274.) that if a trustee had the use of a specific chattel during his life, the equitable property would bind the legal, and that if a creditor of the trustee took the goods in execution, he would himself be converted into a trustee. It is not requisite, however, to go beyond the case, nor does the court mean to give any opinion applicable to a case under different circumstances. Here no difficulty arises, and the case is the same as if the note had never been transferred, or as if *John's* portion of the personal estate had existed in specific moveables of which he had died in possession. The note was never collected in the lifetime of *John*. If it had been paid to him, it would, no doubt, have been a valid payment, but it was not paid; and on his death-bed he assigned the note to *Sarah C. Gregg*, who took it not only as a sealed instrument, but with full knowledge of the will, and of the rights under that will, and the note was still in *John's* actual possession at his death. *Sarah C. Gregg*, therefore, took the note, subject to all equity; and the release which she executed to the defendant was after the commencement of the present suit, and with due notice to the defendant of the controversy. It was done in fraud of the rights of the persons entitled in remainder, and if the limitation over was valid, and is to be regarded in a court of law, the rights of the surviving sons under the will must be protected against this assignment and this release. They were both made in violation of a vested right.

Most of the cases on the subject of executory devises have come from the court of chancery; but the courts of law have, always, from the earliest notice of executory devises, and whether they related to real or personal estates, given them the same construction and effect that were given to them in chancery. (8 *Co.* 94. *Cro. Car.* 343. 1 *Salk.* 225. *Comp.* 410.) The remedy may be different, but the rules of property are and ought to be uniform in both tribunals. The interests in remainder, on a valid executory devise of lands or chattels, are *legal* interests to be carried into execution when they arise.

The court are accordingly of opinion that the plaintiffs are entitled to judgment.

Judgment for the plaintiffs.