The opinion of the Court was delivered by
Cheves, J".
This case was argued, on the motion for a new trial, with ability, learning, and discrimination, on both sides; but it was almost a waste of these precious gifts, to have expended so much upon it, for it is a clear case.
For the plaintiff, it was argued :
1. That the intention of the testator is the governing rule in the construction of wills.
2. That though the words of the bequest to Florida Guery, would give an estate tail, yet, it would be an estate tail, by implication; that in such cases, there is a distinction between real and personal estate: and that such words as create an estate tail by implication in real property, when applied to personal, give the first taker an estate for life only, and the person to who.m it is limited over, the absolute estate.
3. That from the context of the will, from the particular word “then,” which was an adverb of time, and referred to the death of the first taker, and the word “ return,” used to express a limitation over to the plaintiff, a person then in esse, it appeared that the testatrix did not intend, by the words, “dying without heirs of her body,” an indefinite failure of issue, but a failure of issue at the death of Florida Guery..
For the defendant, it was contended :
*1. That where the words would give an estate tail, in real estate, they vest an absolute estate in the first taker.
2. That this is true, as well of an estate tail by implication, as of an express estate.
3. That there are no words in the will which will take this case out of the general rule.
*43 It is certainly true, that the intention of the testator ought to be a governing rule, in the construction of wills; but that intention must be expressed, and it must be consistent with the general rules of law.
In ascertaining what is the intention of a testator, the Courts have toisely established certain rules for their own government, in order to exclude themselves from the exercise of an unlimited and arbitrary discretion in each particular case. According to these rules, where they exist, and where they apply, are Courts of Law and Equity, both bound to determine the question of intention. It is of the utmost importance that these rules, when established, should not be departed from, whether they are wise in themselves or not. In an enlarged view of the duties and functions of judicial tribunals; the determination of the particular cases which they adjudicate, is altogether of minor importance. In the more remote influence of a case, in keeping a thousand of the like kind out of Court, and settling the rules of property, is discovered its, greatest value. The community generally, and the bar especially, ought to be able to know beforehand, what will be the decision of a Court on any question which may occur, and which is not new or anomalous. If this be true, it is (at least it ought to be) vain to argue to a judicial tribunal on a question like this, that any rule heretofore laid down for the government of the construction of wills, should be departed from, because of particular hardship, or of new views of policy. Where nothing is established, they may have their influence, and not otherwise. But the leading rule on this subject, is one, which under our institutions, should be cherished. I mean that which declares, that perpetuities in *the limitation of estates, should be prevented. It is a highly useful auxiliary to that great provision of our constitution, the abolition of the rights of primogeniture. While, therefore, I feel it to be my duty to give full effect to the intention of the testator in ulterior limitations, within the rules, and according to the principles, and the true understanding of the cases which have been heretofore established and decided, I am not disposed to go one step further.
In the vast number of cases which have been decided on this subject, there is no doubt some contradiction; but if we will let them remain unshaken, as they hpe been long very well understood, future cases, like the present, will probably be as well decided out of Court as by us, and consequently very rarely call for our attention. If, by an unceasing effort to increase the pretences, which have found exceptions to the general rule, we invite experiment, and create a kind of enterprise in the hazards of the law, we cannot reasonably complain that plain cases are seriously argued before us. The intention then of the testatrix, in this case, is to be gathered from the words of the will, according to the construction which has heretofore been put upon them.
2-. We are now brought to consider, what was the intention of the testatrix, according to the rules of constructon, to which we have alluded.
It is admitted, and very properly admitted, by the counsel for the plaintiff, that the words of this bequest, if they were applied to real estate, would give an estate tail, (were the statute of force with us,) by implication ; but that these words, being here applied to personal estate, gave Florida Gfuery only a life estate, and on her dying without issue living at her death, the limitation to the plaintiff was good. Such a *44 distinction has been often taken, it must be admitted; but I believe it has only been taken arguendo, and that, in the cases in which it has been relied upon, ,the decision is sustainable on other, and less questionable principles. But weight may have been given to it at some *period. ,It has not now, and never has-had, (though it has been sometimes mentioned, as in Lyde v. Lyde,) any considerable weight, since this subject was brought into so much light, by Mr. Fearne’s admirable Treatise. Mr. Fearne, after having examined all the cases, and having established them on other principles, proceeds to say, “ It is obvious, that if the Courts had grounded their decisions on this distinction, it would have been needless to have inquired into, or insisted upon those circumstances of restriction, upon which, in delivering their opinions, they laid so much stress.” “Besides,” he adds, “where there are no restrictive circumstances, it has been determined, that the limitation of a term over, after dying without issue, even in cases where the limitation could only have given an estate tail by implication, in' real estate, is to be taken in the legal sense of the expression, and therefore the limitation over being in that sense, too remote, is utterly void.” Fearne on Exec. Dev., 233. What Mr. Fearne deduced from an examination, and collation of all the cases decided, prior to the time when he wrote, has been repeatedly and solemnly since confirmed. 3 Ves. Jr. p. 99, Chandless v. Price, (17 Ves. Jr., 479,) Barlow v. Salter.
I think the frequent reference to the rule, that where the words will give, in real estate, an estate tail, the first taker shall have an absolute estate in personal property, has led to a confused understanding of the principle. It is not a primary rule, but only ancillary to the general rule of remoteness. The real question is always, whether the limitation over is too remote or not? Whether the words, “heirs, issue, heirs of the body, children,” and the like, are words of limitation or words of purchase ? Whether they express an indefinite succession of persons, included within these terms, or whether they point out certain particular persons, who may exist, and must take within a period not excluded by the rules of law ? It is of no importance what the words of limitation be, or wl^it estate they would create in real property, if there be *sufficient words or circumstances of restriction. Though they would give a fee, if unrestricted, yet, if sufficiently restricted, they will be words of purchase. Fearne on Exec. (Dev. 224.) The material question always turns on the circumstances of restriction, and I do not know that the influence of these circumstances is varied by the state of the question, whether the words of limitation, if applied to real estate, would give an estate tail implied or expressed. Much has been said about the distinction, first taken in Forth v. Chapman, (1 P. Wms. 663,) between the same words applied to real and personal estate. But it seems to me this discussion only agitates a general question, which cannot bear-upon this, or any other case of personal estate. The effect of Porter v. Bradley, (3 T. R. 143,) is not to change any of the rules of construction, applicable indiscriminately to real and personal estate, and it may be doubted whether there is anything more in that case than the dictum of Lord Kenyon ; for the words of the devise are “ leave behind him.” Now these words seem equivalent to “leave, living,” and bring the case within the acknowledged rules in cases of real estate. I *45 believe the case of Forth v. Chapman, was never questioned in this point, before the case of Porter v. Bradley; for I think it is a mistake to say (Exors. of Moffat v. Strong, 10 Johns. 16,) that Lord Hardwicke exploded this doctrine in Beauclerk v. Dormer, (2 Atk. 314.) Lord Hardwicke does not speak at all of real estate. His words are, “ It would be of very mischievous consequence, and introduce great confusion, if the Court should admit of a distinction between chattels personal and chattels real.” And this point of Forth v. Chapman, is now firmly re-established, if it ever was shaken, in England, in the case of Crooke v. Devandes, (9 Ves. Jr. 203.) It is impossible to say, (because our decisions perish almost as soon as they are brought to light, for want of publication,) what precise regard has been paid to the authority of Forth v. Chapman, in this State. But I believe it has never been doubted, that in a bequest of *personal estate, the words “leaving, leave,” &c. (as in Forth v. Chapman,) would restrain the dying without issue, to dying without issue living at the death of the first taker. And on the other hand, I believe it has never been determined, that the samé words, without auxiliary words or circumstances, would, in a devise of real estate, have the same effect.
3. It is only left to us now to inquire, whether there are any words or circumstances in this will, which can restrain the words “but in case my daughter Florida should die without heirs of her body,” to a dying without issue living at her death? The word “then” is relied upon, which it is said, is an adverb of time, referring to the death of Florida; and fixing that event at the time when the limitation over to the plaintiff was to take effect. Thus, “ but in case my daughter, Florida, should die without heirs of her body, then (at the death of Florida,) the said negroes, &c ” But in this particular, this case is precisely the case of Beauclerk v. Dormer, so as it regards the limitation over to the plaintiff, being to a person in esse, it is like that case, and a great many more, where the circumstance has had no operation, or even regard. But it is said, that even in this case, the word return is calculated to show, that the testator contemplated the actual personal enjoyment of the property by the plaintiff; and therefore did not intend an indefinite failure of issue. Standing alone, as it does, at best, this is a very slight circumstance. But it is evidently used, without adverting to its correct meaning, as a synonyme for “go, pass,” &c. If any other meaning wore to be put upon it, (it would rather seem,) it ought to be, that on a general and indefinite failure of succession to herself in the issue of her daughter, that it should return to that succession, in the person of her son, (the plaintiff,) and his issue ; for in the ulterior limitations, she contemplates the transmission of the property to his issue, and even over, still in the line of her own blood. It may seem to have, in the use of this word return, a ^resemblance to the ease of Kielly v. Fowler,[1] (6 Bro. P. C. 309,) where the words were, that in case his said daughter should die without issues, all his said substance should return back to his executors, to be distributed, &c. But in that case, as Mr. Fearne observes, “it was considered as a personal trust, in those particular executors, to be performed by them, after the determination of the first estate,” (Fearne *46 Exec. Dev. 238,) which shows that if there be any resemblance between the cases, it is in sound, not sense, and is only in the accidental occurrence, in both, of the word return, which was not relied upon in Kielly v. Fowler. Indeed, Lord Thurlow, in Bigge v. Bensly, (1 Bro. Ch. Rep. 190,) says that “it would be better sense to say, that, in Kielly v. Fowler, there was no rule of construction than Mr. Fearne’s,” and although I may not be disposed to subscribe, either to the truth or harshness of the remark, yet it may authorize me to say, that when the circumstances relied upon in this case, fall so far short of the disputed example, it can have no weight.
King, for the motion.
On the whole, I am clearly of opinion, that the limitation over to the plaintiff is too remote, and that the motion for a new trial must be refused. This is the unanimous opinion of the Court.

 3 B. P. C. 299.