The opinion of the court was delivered by
Duncan, J.
The right of the plaintiff depends on the construe» tion of the clauses in the will of Jacob Phillips, by which he directs his executors, to sell his real and personal estate, and t( that the interest of one half of the proceeds shall yearly, and every year, be paid by his executors to Hannah Nunez, her heirs and assigns for ever, during her •natural life. But, in default of issue of the said Hannah Nunez, the said moiety of the principal and interest shall descend to the next of kin, or heirs at common law, and their heirs and assigns for ever.” And- the question is,—did the whole moiety of the principal and interest vest absolutely in Harriet Nunez, or was the limitation over to the next of kin good? The difficulty in encountering a question of this kind, arises from the multitude of contradictory cases, now swelled at least to one hundred. Most of the leading ones have been marshalled and arranged in this argument. It would be a futile attempt to endeavour to remember them all, and to com- *148 merit on them particularly would be time misspent. It will be more satisfactory to lay down some generally conceded principles and rules of construction, which have become rules of property, drawn from decisions, than tediously to refer to the particular authorities. Personal estate cannot be entailed,, It makes no difference, in regard to the rules of construction, whether the use, interest, or profits be given with a limitation over of the thing itself, or a bequest of the thing itself. This was formerly a fine-spun distinction, which in process of time, as personal property increased in estimation, and the liberality of courts extended, has been long exploded; and it is now perfectly settled, that whether it be a bequest of the thing itself, or its use, makes no difference. The general principle is, that where there is a limitation of a chattel, by words, which, if applied to freeholds of inheritance, would create an estate tail in personal estate, the whole interest vests absolutely in the first taker. . There is a distinction, however, as to the words, dying without leaving issue, between a devise of real and personal estate; in the former, generally, they seem to be construed to mean indefinite failure of issue,—in the latter, issue at the time of the death of the first taker. The distinction between the same words in the same will, when applied to the different kinds of property, was first taken in Forth v. Chapman, and though there are respectable opinions opposed to this, the distinction is settled, not only in England, but where the question has been considered in the several courts of the United States. In Massachusetts,—8 Mass. Rep. 39. In Virginia,— M'Call, 338, and 2 Munf. 479. In South Carolina,—4 Dessauss. 330. And, in New York,—10 Johns. 12. And the principle has been acknowledged, though not perhaps actually decided in our own -courts. But this consideration is not necessary in the present inquiry; for the question is, and it is a narrow one, .whether the bequest of a chattel interest for life, and no particular bequest to the issue, but limited over in default of issue, the limitation over is good. This shortens our inquiry, and precludes the necessity of travelling over the whole field; for there is no circumstance, nothing in the will to confine it to issue living at the death of the first taker; and it does not seem necessary to effectuate the general intention of the .testator so to construe it, but rather the contrary; for nothing was intended to go over, until the expiration of the whole generation of Hannah Nunez, and I think it may be safely stated, that there is no case to be found in the multitude of decisions, in which the words, dying without issue, standing alone, have received a different construction in the bequest of personal estate, and a devise of land; and they mean, in both cases, indefinite failure of issue. The only difference is, that in personals the court lays hold of any other word .to give effect to limitations that otherwise would be bad, to effectuate the intention of the testator; but, in a devise of lands,- construing them in *149 definite failure of issue, gives the devisee an estate tail, provides' for the issue, and the second devisee would take as a remainder. The law does not regard the circumstance, that the tenant in tail may bind all by common recovery.
The reason why, where a bequest for life is to one, and nothing directly given, to issue, but limitation over in default of issue, it vests the absolute interest in the first taker, is given by Chief Justice Kent, in 10 Johns. 15: “If a man gives an estate in general to A. for life, and adds, but if he die without issue, and then gives it to B., B. has no immediate gift, but only a contingent interest, on A’s. dying without issue; and it would counteract the intention of the testator, if B, took it immediately on the death of A.; therefore, ex necessitate rei, these words operate an enlargement of the estate for life; for otherwise the issue of A. would not take at all, and B. would take the whole. It is necessary that A. should take an estate which must devolve upon his issue, and upon that ground his estate is extended'beyond an estate for life; and, in a freehold inheritance, it is decreed to be an estate tail, and, in a chattel interest, an absolute property. A. must be considered as taking for the benefit of his issue, as well as of himself, and he must take so that the property would be transferable through him to his issue, and this can only be by his being considered as taking an estate tail in the one case, and possessing the whole interest in the other.”
The consequence of any other construction, it may be added, would be, that as no interest springs to B., and no express estate is given after the death of A., the intermediate interest would be undisposed of, unless A. was considered as taking for the benefit of his issue, as well as for himself. But as an estate in chattels is not transferable to the issue in the same manner as lands, and not capable of any kind of descent, the whole interest is given to the first taker. 3 Roper on Legacies, 394. And though this appears to be artificial reasoning, yet the rule is founded on the nature of the two kinds of property, and here is recommended as the only, one by which the general intention of the testator can be effectuated. The intention is clear, to transmit the legacy to all the issue of Hannah Nunez. That in real estate would be an estate tail; but as personal estate cannot be entailed, the absolute interest vests. Issue through all time, indefinite failure of the first taker,—nothing to go over, but on failure of the whole race; and courts cannot vary the construction, according to subsequent events.
It is to be understood, that this opinion is founded on the consideration that the limitation vests upon the extent and import of the words,'in default of issue, without the concurrence of any restrictive intention to narrow them down to issue of Hannah Nunez, living at her death; for if there were such circumstance, of intention, .the limitation would have been good; as was decided *150 by this court, in 2 Serg. & Rawle, 62, and 6 Serg. & Rawle, 29. There it was held, that those words, standing alone, would not, ear vi termini, signify a dying without issue then living. To restrain them, there must be some apparent restrictive intention,—some clause—some circumstance in the will, which would indicate or imply such intention. A definite failure of issue, is where a precise time is fixed, not in express words, but inferrible with reference to some particular time, or event. There is no time here, no event referred to except one—death without issue.- The word issue, unattended by any circumstance of contrary intention, is required for the purpose of limiting this general sense of the word. The absolute interest in this-moiety vested in Hannah Nunez, and passed to her executor, the plaintiff.
But it is contended, there can be no recovery against this defendant. Now the bond on which the defendant received the money, under the authority of the executors of Phillips, expressly states that it was the very trust money lent out in pursuance of the directions of his will: the interest to be paid to Hannah Nunez during her life; the principal, on her death, to go according to the directions of the -will. It was this very trust that came into the defendant’s hands, with his knowledge. The misapplication of this money to his own debt was a breach of trust in which the defendant with'notice participated. The trust money can therefore be followed into his hands, as money had and received for the cestui que trust, the plaintiff. He has the money of those beneficially interested, with notice, when he received it, that it was theirs. Every principle of natural justice calls on him to refund it. I do not see any good reason why he should not repay it with interest. He has converted the money, or claims to convert it to his own use. The interest is but a just compensation for this detention. Judgment must therefore be rendered for the plaintiff on the verdict.
Judgment for the plaintiff.