## ARGUED AND DETERMINED

IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT MILLEDGEVILLE,

### MAY TERM, 1847.

No. 45—WILLIAM N. KIRKPATRICK, guardian of Mary Ann Shaw, plaintiff in error *vs.* JOHN DAVIDSON, JR. defendant in error.

[1.] Trusts in personal property may be created, and if necessary *proven* by parol declarations.

[2.] A remainder in slaves, to take effect and be enjoyed after a life estate, cannot be created by parol in favour of persons not in being at the time the property is delivered to the tenant for life.

Trover. From Jasper Superior Court. Tried before Judge MERRIWETHER. October Term, 1846.

The facts of this case, and the grounds of error, are set forth in the opinion of the Supreme Court, to which the reader is referred.

DAWSON & McHENRY, for the plaintiff in error.

CONE, for the defendant in error, made the following points:

First. An estate in remainder in chattels cannot be created by parol. 2 *Black. Com.* 398; 1 *Eq. Cas. Abr.* 360; 2 *Freeman R.* 206; *Gilbert's Uses and Trusts, by Sugden,* 121, note 4; 1 *Pr. Wms.* 1, 500, 748; 10 *John. R.* 12; 5 *John. Ch. R.* 334; 4 *Hen. & Munf. R.* 503; 2 *Sergt. & Rawle R.* 59; 6 *Ib.* 29; 2 *Munf.* 479; 1 *Hill R.* 196; 2 *Kent's Com.* 285, 286; 1 *Bailey R.* 100; 1 *Hawks R.* 312.

Second. Personal property cannot be secured to the separate use of a married woman by parol, so as to prevent the marital

rights of the husband from attaching. *Jeremy Eq.* 207; 2 *Brown Ch. R.* 586; 2 *Story Eq. Juris.* 299; 1 *Eq. Cas. Abr.* 383; 1 *Mylne & Keene Ch. R.* 506, 520; 2 *Fonb. Eq. b.* 2, *ch.* 1, *sec.* 4; 3 *John. Ch. R.* 488; 1 *Ves. Jr. R.* 196; *Atherly*, 149.

Third. Trust estates for the separate use of a married woman, upon her death, the husband surviving, belong to the husband. 2 *John. Ch. R.* 229; 5 *Munf. R.* 667; 1 *Pr. Wms. R.* 378; *Clancey on Rights, &c.* 11, 12; 2 *Brown Ch. R.* 587.

*By the Court*—LUMPKIN, J. delivering the opinion.

This was an action of trover, tried at the October Term, 1846, of the Superior Court of Jasper County. It seems that one Watson Shaw intermarried with Ann Eliza Kirkpatrick, by whom he had issue one child only, Mary Ann Shaw, the plaintiff in the action below. Shortly after the intermarriage, James H. Kirkpatrick, the father of Shaw's wife, placed in the possession of his daughter a negro girl, named Matilda, stating at the time that he gave the slave to Mrs. Shaw, for her sole and separate use, during her lifetime, and then to her children in remainder, or, as one of the witnesses stated at one time, "then to the heirs of her body;" *which words the donor used, as he understood, as synonymous with children.* Watson Shaw admitted repeatedly in conversation, that Matilda was given to his wife by her father, to be her property during her natural life, and then to her children. And at one time he wrote a letter to his father-in-law, suggesting the propriety of selling the woman, and her child Anderson, the subject of the present suit, and putting out the proceeds at interest for Mary Ann, his grand-child, when she should become of age. This communication being lost or mislaid, its contents were proven. It was in evidence that Watson Shaw wrote another letter to James H. Kirkpatrick, complaining that it was hard that these slaves should belong to his daughter, and requesting the said James H. to convey to him a portion of the property, provided it was in his power to do so. Kirkpatrick, in his reply, stated that it was not practicable for him to comply with his request, on account of the disposition already made of the negroes. It was in testimony that Mrs. Eliza Ann Shaw was dead, and that Mary Ann was her sole surviving offspring, who, by her guardian, William N. Kirkpatrick, brought this action of trover, to recover Anderson, the son of the woman given in trust to her mother. The defendant, by his plea,

disclaimed any property in the boy, and stated that he held possession of him under a contract of hiring for the year, from Watson Shaw. So that in fact the contest is one between father and daughter.

Several questions arose during the progress of the trial, two of which only need be discussed now. One is, can a trust in personal property be not only created, but, if necessary, proven by *parol* declaration? From the transcript of the record, it does not appear that this point was expressly adjudicated by the presiding judge, although fully made and presented by the pleadings. The other is, could a remainder in slaves have been created by *verbal* gift, made at the time of delivery of Matilda to Watson Shaw, to the children of Mrs. Shaw then unborn? Judge Merriwether held that such remainder was void.

Before the Statute of Frauds, a valid trust, either of real [1.] or personal estate, might have been created by parol declaration, if not in all cases, at any rate whenever a deed was not requisite at law for passing the estate or property itself. *Hill on Trustees*, 56.

The 7th section of the Statute, 29 *Car. II, c.* 3, enacts, "that all declarations or creations of trusts, or confidences of any lands, tenements, or hereditaments, shall be manifested or proved by some writing, signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else shall be void." The 8th section exempts from the operation of the act, trusts arising or resulting by the implication or construction of law. *Ibid.*

It will be observed that the 7th section merely requires that the trust should be *manifested and proved* by writing; and upon the construction put upon these words, it has been decided that a trust of *land* may still be effectually *created* by parol, and, in order to satisfy the statute, it will be sufficient to show, by *written evidence*, the existence of the trust. *Forster* vs. *Hale*, 3 *Ves. Jr.* 707; 5 *Ves. Jr.* 308; *Randall* vs. *Morgan*, 12 *Ves. Jr.* 74.

Before the Statute of Frauds, unwritten contracts respecting land, were enforced both in law and equity; and, after the passage of the law, contracts made before were subsequently enforced. 2 *Shower*, 17; 2 *Hayw.* 131; 4 *Johns. R.* 434, 496.

The 7th section, then, of the Statute of Frauds, applying *only* to "lands, tenements, and hereditaments," it is clear that the law, as it affects chattels personal, remains unaltered; and a valid trust of such property may not only still be created, but, if necessary, established and proved by mere parol declaration. *Hill on Trustees,* 57.

It is true, and remarkable that it is true, that but little is to be met with in the books upon this subject. And while *Mr. Perkins*, the Editor of *Brown's Chancery Reports*, subscribes to the foregoing conclusion respecting the operation of the statute, nevertheless he says, that in the course of his reading he does not recollect to have found an instance of a declaration of trust of personal property, evidenced by parol only, having been carried into execution. The case of *Nab* vs. *Nab*, 10 *Mod. R.* 404, which is usually cited in support of the proposition, as in *Saunders on Uses*, 251, *and Roberts on Frauds*, 94, he considers as merely a dictum of Lord Macclesfield, the trust having been established as the admission in the answer.

With great deference to the laborious editor, I would venture to suggest that there are many reported cases, both in England and in this country, where the doctrine, as laid down by Hill, is directly asserted and approved by the courts.

In *Benbow* vs. *Townsend*, 1 *Mylne & Keene, R.* 506, (7 *Cond. Eng. Ch. R.* 143,) Sir John Leach the master of the Rolls, says : " But in this case the trust (which was of money due upon mortgage,) being of personal estate, the case is not within the Statute of Frauds. But the property will belong to the brother after the death of the testator, by force of his declarations, that the £2,000 should after his own death be the property of his brother Job."

In *Bayley* vs. *Boulcott*, 4 *Russ. R.* 345, (3 *Cond. Eng. Ch. R.* 698,) counsel on both sides conceded, that a trust in personal property may be created by parol declarations, and the only question in that case was, whether the declarations did in fact create a trust. And the master of the Rolls says, " It is true that with respect to personal property, a declaration of trust may be by parol, and that a written instrument is not necessary for that purpose. *McFadden* vs. *Jenkins*, 1 *Hare*, 461, *S. C. Phill.* 1537, are to the same effect.

In North Carolina it has been held, that a parol declaration of trust is valid. *Foy* vs. *Foy*, 2 *Hayw. R.* 131.

In *Taylor and wife* vs. *Mayrant and others*, 4 *Desaus.* 505, the court supported a trust of personal estate raised on parol proof.

In *Fleming* vs. *Donahoe*, 5 *Ham. R.* 256. The Supreme Court of Ohio say, " No rule of the common law prohibited the creation of a trust by parol; such a trust was not considered as varying the terms of the deed, but as setting up an independent contract consistent with it."

In *Rutledge's Adm'r.* vs. *Smith's Ex'r.* 1 *McCord Ch. R.* 119, the

Court held that a voluntary acknowledgment will dispense with the written proof of a trust; and further, that equity would compel the acknowledgment of a parol trust though the Statute of Frauds was relied upon.

In *Letcher* vs. *Letcher*, 4 *J. J. Marsh. R.* 592, the Court of Appeals in Kentucky distinctly recognise the doctrine that parol evidence is admissible to establish a trust in personal property.

As to the right to create a remainder in chattels " by word [2.] of mouth," to adopt the expressive language of the courts, the process of reasoning by which the power is negatived, is short, simple and to my mind unanswerable.

Anciently there could be no limitation over of a chattel, but a gift for life carried the absolute interest. Then a distinction was taken between the *use* and the *property ;* and it was held that the use might be given to one for life, and the property afterwards to another, though the devise over of the chattel itself, would be void. It was finally however settled, that there was nothing in that distinction, and that a gift for life of a chattel was a gift of the use only, and the remainder over was good as an executory devise. 2 *Kent,* 285; 2 *Black. Com.* 398. And the general rule as now established by numerous decisions, is, that if a man either by *deed* or *will* limit his chattels to A for life with remainder over to B, the remainder is good. 1 *Burrow.* 284; 6 *Cruise,* 497; 3 *Call.* 50; 10 *John.* 12; 2 *Serg. & Rawle,* 59.

Mr. Coleridge in his edition of Blackstone as cited in a note in Stephens' Commentaries, still insists there can be no remainder in chattels created by *deed,* and that such remainder is good only by way of executory devise. But the cases quoted, and many others which might be referred to, show that this distinction has long since been disregarded. And while it is true, that most of the cases to be met with in the books have arisen upon wills, yet it may now be considered as settled, that remainders in personalty may be created equally by grant or devise.

The policy of the law, Judge Tucker thinks, is fairly questionable. He apprehends that it is calculated to create mischief and give rise to vexatious litigation. The preservation of his rights by the remainder man, will lead, he fears, to a perpetual espionage into the conduct of the tenant for life; and this prying into the private concerns of the latter, excites frequently the most bitter animosity on his part. There are few principles in the law more calculated to generate and to cherish petty law suits than this; and

perhaps the wisdom of the old common law is no where more con-
spicuous than in totally discountenancing all such limitations.
1 *Tuck. Com.* 312.

Now it will be perceived· that the common law has never gone
further than to extend the right to create remainders over in per-
sonal estate, *by writing;* such were its provisions at the beginning
of the Revolution, when adopted by this State. The inquiry, then,
very naturally presents itself, by what authority can courts take it
upon themselves to dispense with *this writing ?* It is not pretended
that there is any statute still further extending the common law;
and, in the absence of such legislation, where the common law
stops, we must stop.

And public policy stands decidedly opposed to a wider departure
from the ancient doctrine of the law as to these limitations. If
even, when evidenced by *grant* or *will,* they are justly obnoxious
to the eloquent strictures of Judge Tucker, what shall we say by
them when resting only *in parol?* Slaves and other personal prop-
erty, in the possession of one person, with remainder over to some
half dozen others in succession, to any number of lives in be-
ing, and twenty-one years and the period of gestation after—
what inextricable confusion; what a rich harvest of perjury.

The case of *Brummet* vs. *Barber,* 2 *Hill S. C. R.* 543, fully sus-
tains the position of counsel for the plaintiff in error, to wit: that
in a gift of personal property, the donor may verbally create a lim-
itation over either by way of trust, or as a direct gift. I regret to
add as I must do, but with profound respect, personal and judicial,
for the eminent individual who delivered the opinion of the Court in
that case, that the decision *pro tanto,* was not demanded by ·the
facts of the case; the trust being sufficiently *manifested by writing*
to take the case out of the statute, had real estate instead of slaves
been involved in the suit. And the *receipts* in this Carolina case
differ from the *letters* in the one before.us, in this, that the former
plainly and fully set forth the terms and tenure by which the per-
sons in possession took and held the property; whereas the let-
ters written by Watson Shaw furnish no such evidence.

Shall it be answered that it is absurd to maintain that one may
convey chattels absolutely by *parol,* or create a trust in them, and
yet to hold that he cannot in the same way transfer them in the
life of another, and then that they go over in remainder or rever-
sion ? The reply is, that such undoubtedly was the ancient com-
mon law. For at the very period when it was held that there

Kirkpatrick *vs.* Davidson. •

could be no remainder in chattels, nevertheless the owner was allowed to dispose of them absolutely, or raise a trust in them by *parol.* Thus demonstrating that there is no legal incongruity in the two propositions.

I trust that the day is not distant when the titles to slaves shall pass only by writing. The more that *parol* testimony is restricted, the better, whether it be used to create or destroy rights. I always involuntarily tremble for the rights of parties where they are dependent upon the unassisted memory of witnesses. In England *nuncupative* wills are entirely abolished; and promises to take cases out of the plea of infancy and the statute of limitations, must be in writing. I will not say that we need another statute for the prevention of frauds and perjuries; or with *Lord Nottingham,* that every line in that which we have, is worth a subsidy, but I will say, and it is universally felt and admitted, that further legislative enactments are greatly needed in this State, to discourage and totally cut off the great temptation and facility of defeating justice by *oral testimony.*

It only remains, in conclusion, to subjoin, that we concur cordially in the opinion of the Supreme Court of Appeals in Virginia, in *Fitzhugh* vs. *Anderson and others,* 2 *Hen. & Munf.* 302, " that no remainder in a slave can be created by any verbal gift, made at the time of the delivery to the first taker." And that consequently the *contingent* limitation over in this case, upon a dubious and uncertain person, namely, the children of Ann Eliza Shaw, then not *in esse,* is void.

It is not necessary that we should decide who has the title to these slaves ; as the plaintiff in trover must recover upon the strengh of her own title, it is enough to declare, as we do, that the paramount title to the property is not in her.

The judgment below must be affirmed.