## FLINN *vs.* DAVIS et al.

1. Where a testator bequeathes personal property to his daughter and the heirs of her body, and if she die "without leaving lawful issue from her body," then over, the word, *leaving*, limits the meaning of the words, *issue from her body*, to issue living at her death, and the limitation over is good as an executory devise. And, since estates tail have been abolished in this State, the same rule of construction should be applied to devises of real property.—(Per DARGAN, C. J.— the court expressing no opinion on either point.)

2. Where a devise over is of all the estate, which the first devisee "may die possessed of, or entitled to, both real and personal, under and by virtue of my will," the words, *may die possessed of, or entitled to, &c.* must be understood as limitating the remainder to so much as the first devisee may leave undisposed of at his death, and his absolute right to dispose of the property is therefore necessarily implied.— (Per the Court—DARGAN, C. J., dissenting.)

3. When by the terms of a will the first devisee is given the absolute right to dispose of the property, a limitation over of so much as he may leave undisposed of at his death, is void for repugnancy.

ERROR to the Chancery Court of Clarke. Tried before the Hon. J. W. Lesesne.

THE bill in this case was filed by the plaintiff as the half brother and heir at law of Ann Eliza Davis, deceased, to recover from the defendants certain real and personal property, which

they claimed, as remaindermen, under the will of Norphlet Davis, deceased. The *first* clause of the will devises certain real estate to the widow, and Ann Eliza Davis, the infant and only daughter of the testator, to be divided equally between them— the part apportioned to the daughter, to her and the heirs of her body forever, and that apportioned to the widow, to be used and enjoyed by her until the daughter should marry or become of age, when it was to become the property of her and the heirs of her body forever. The *second* clause wills to the said Ann Eliza, then unmarried, subject to the foregoing provision, all the lands, which the testator should " die possessed of, or entitled to." The *third* clause bequeathes certain slaves and other personal property absolutely to the widow of the testator. The *fourth* clause bequeathes to the daughter and the heir or heirs of her body, certain slaves, all the money, which the testator might die possessed of, or which might be due him at the time of his death, or thereafter become due him, either by bonds, notes, mortgages, or in any other manner, and all other personal property, not otherwise disposed of, " which he might own or be entitled to, in any way or manner, at the time of his death." The *fifth* clause is in the following words : " If my said daughter should die without leaving issue from her body, then I will and ordain that all the estate, which she may die possessed of, or entitled to, both real and personal, under and by virtue of my will, shall go to, and be equally divided between Benjamin Davis, the son, and Lucy Ann Davis, the daughter, of my brother, Sugar Davis, and to their heirs, and to hold the same share and share alike forever."

The daughter of the testator died without issue, and the executors thereupon delivered over the whole estate devised to her to the said Benjamin and Lucy Ann Davis, the defendants in error. The chancellor, on the final hearing, considering the devise over to the defendants to be good as an executory devise, dismissed the bill, which is now assigned as error.

JOHN T. TAYLOR, and SEWALL, for the plaintiff:

The statute of 1812 declares, "that every estate in land and slaves that now is or shall hereafter be created an estate in *fee tail*, shall from henceforth be an estate in *fee simple*, and the same shall be discharged of the conditions attached thereto at

common law, so that the donee or person in whom the conditional fee is vested, shall have the same power over the estate as if they were pure and absolute fees."—Clay's Dig. 157, § 37.

I contend that the words of the will give the daughter of the testator an estate tail at common law in the land and slaves, which the statute changes into "a pure and absolute fee, deprived of the conditions attached at common law," and the complainant, being her next of kin, was entitled to it, at her death, by descent. The first question to decide then, is, would the words used in the will create an estate tail in the daughter at common law? And in determining this question, we have only to inquire what the law was at the time the act was passed, or what it would be if estates tail had never been abolished in this State. The statute affords no new rules to guide us to a conclusion, but simply changes the estate when ascertained to be in tail to a fee simple. Nor can any inference of the testator's intention, or any reasoning be entertained, drawn from the fact that estates tail are abolished in this State.—Anderson v. Jackson, 16 Johns. 403-423-24; Eldredge v. Fisher, 1 H. & M. 559; Carter v. Tyler, 1 Call, 143; Tate v. Tally, 3 Call, 307; King v. King, 12 Ohio, 470. The words, "to her and the heirs of her body forever," as used in every gift to the daughter, create an express estate tail in the very language laid down in all the books; but even if the words were, "to her for life, or in fee, or generally," then the words, "if she die without leaving lawful issue of her body," would create an estate tail, by implication, in the land and slaves.—4 Kent's Com. 273; Patterson v. Ellis, 11 Wend. 259; Miller v. McCombe, 26 ib. 229; Osburn v. Shearer, 3 Mason, 391; Echelburgher v. Burnetts, 3 S. & R. 470; Mahelable v. Nightingale, 15 Pick. 104; Hulberry v. Emison, 16 Mass. 241; Davidson v. Davidson, 1 Hawks, 163; Newton v. Griffith, 1 H. & Gill, 111; King v. King, 12 Ohio, 470; Tate v. Tally, 3 Call, 307; 2 Gill & Johns. 458.

A use is attempted to be made of the statute, in this,—Chancellor Lesesne says—"admitting the statute changes the estate to the daughter to a fee simple, an executory devise can well be limited after an estate in fee." The character of the fee that precedes an executory devise, is very different from the kind of fee that the statute creates in the place of the estate tail; the former is a base or *conditional* fee, depending upon the having of

issue; the feoffee has a limited interest; he cannot sell, mortgage, or any wise incumber it so as to affect the rights of the remainderman, not even by fine and recovery. The fee given by the statute is discharged of all conditions whatever, and the feoffee holds "a pure and absolute fee" which includes the power of sale or any disposition thereof as his own entire property, which is totally inconsistent with the existence of an executory devise in the same property. But this point has been frequently raised and pointedly overruled.—1 Call, 143; 8 Leigh, 449, and cases there cited; 16 Johns. 423; 3 Call, 307.

As the statute only operates upon the land and slaves, the balance of the personal property will depend upon another rule of law, to-wit: Whether the limitation over to the defendants is too remote? I contend that it is, and that the same words, without exception that would create an estate tail, if the devise was of lands, when applied to personal property, will vest the entire interest in the first taker.—Scott v. Abercrombie, 14 Ala. 275; Darden v. Burns, 6 ib. 365; Dunn v. Davis, 12 ib. 139. If then we have shown from the authorities cited, that an estate tail would have been created in the land, then the question as to the personal property, according to our own decisions above cited, is at an end, also. But it is said by the defendants that there is a distinction in this respect, between real and personal property, and the case of Forth v. Chapman, and numerous cases, decided on this authority, are relied on. I deny that this distinction has ever become established as a rule of law, either in England or in this country. A great number of cases have been decided at different times on both sides of the question, but the weight of authority is decidedly against the distinction. In England, Lord Thurlow, Lord Loughborough, Lord Alvanly, Lord Kenion, Sir Wm. Grant, Sir Thomas Sewell, Sir Joseph Jekyll, Lord Hardwick, The King's Bench, in the case 4 H. & Selw. 62, have all decided against the case, as appears fully in the cases next refered to, where their defunct decisions are cited. In this State, the court say, (in the case of McGrew v. Davenport, 6 Porter,) that the authorities are against it, and the following American authorities all decide positively against the distinction, and declare the case to have been long since overruled.—See all the cases cited in 11 Wend. 260; 3 Ark. 147; 12 Ohio, 470; 8 Mass. 3; 4 Kent, note a, 282.

But, again, I contend that the distinction was not between the words, *dying without issue*, and *dying without leaving issue*. This is clearly perceptible in reading the leading cases on the subject; particularly the case of Patterson v. Ellis, 11 Wend., at p. 292; the great argument of Chancellor Kent, in the case of Jackson v. Anderson, 16 Johns., and the case of Forth against Chapman, the sole authority for all the subsequent cases. The judge himself does not, in the reported opinion, lay any stress upon the word *leaving*, but says that the word *die*, being the last antecedent, the words, *without issue*, refer back to it, and signify the time when the devise over must take effect.—See also, the case of King v. King, 12 Ohio, and case in 8 Mass. 3; 3 Ark. 147. I admit that there are a number of cases to be found turning alone on the word *leaving*, but I respectfully submit, whether they were not decided upon a misapprehension of the supposed distinction, owing to the great confusion of authorities, since the case of Forth v. Chapman. The question really was, whether the words, *dying without issue—dying without leaving issue*, or *dying without having issue*—did not all of them, when unaided by other expressions, have a different effect when applied to real and personal property. Is there the lightest shade of distinction between the two former expressions? If A. dies *without issue*, he certainly dies without *leaving issue*, and if he dies without leaving issue, he certainly dies without issue. The Supreme Court of Alabama have twice held that the words, *die without issue*, imply an indefinite failure of issue.—See McGraw v. Davenport, 6 Port. 319, and 6 Ala. 365. And in making these decisions, they virtually decide against the distinction in Forth v. Chapman. But if the question was open here, will the court set up a distinction, that is not a settled rule of law, that for the last hundred years has never found rest, and is admitted on all hands to be without reason; or will they rather hold to the simple rule, already decided here, that whatever words, when applied to land, will create an estate tail, will give the absolute property when applied to personalty.

Again: the first estate, in the case of Forth v. Chapman, was for life only, and the words used in the will were not permitted to *create* an estate tail by implication, or of sufficient force to *imply* an indefinite failure of issue. But in our case the first estate is to her *and the heirs of her body forever*, and there is a great dif-

ference between the questions, whether the words will *imply* an indefinite failure of issue, when the testator is otherwise silent, and the question whether they will be given force enough to overturn the previous positive expression of the testator himself. This, I contend, makes the two cases entirely different.

It is contended, that the latter part of the fifth clause in the will,—"all the estate that my daughter dies possessed of or entitled to," &c.—tends to restrain the general meaning of the words, *dying without issue*, &c. These words are *descriptive* only. They allude entirely to the *amount* and character of the *property* that Lucy and Benjamin shall take, and not to the *time* they shall take it. The whole meaning of the whole clause taken together is, that he gives *all* the property to his daughter and her issue, and whenever that issue failed, whether at the daughter's death, or *afterwards*, (indefinitely,) then Lucy and Benjamin are to take; but at no time are they to take more than his daughter "*died* possessed of or entitled to," &c.; or, in other words, that portion of the property that his daughter leaves, or does not use, or dispose of, Lucy and Benjamin may take it *whenever* the issue fails. An implication, to be strong enough to do away with the legal import of the previous words, must be such as necessarily restrains them to mean at the time of the death of the first taker, or else they must be of such a character that a clear, sensible, and overbalancing intention can be drawn from them. For instance, if property is given to A., and if he die without issue, then to B. *for life*, here the limitation over must necessarily vest in B.'s life, if at all, for his estate is only for his life, and he being *in esse* at the time of the gift, brings it within the time prescribed for executory devises. Again: the testator's mind was clearly not on *time;* therefore no intention either way can be drawn from the words. If the daughter had issue and died, and in a few hours after, the issue died—is there any thing in the will that shows that the testator intended that in that case Lucy and Benjamin should receive nothing? Certainly not. It may be that he did not intend to create a contingency that would last always, so as to be a perpetuity; but be this as it may, he certainly did not intend to fix a day beyond which it *should not* last. It is one of those *indefinite* limitations that the law declares void, because it *may* reach beyond the time allowed. The case of Ide against Ide is relied on by the

defendants on this point; but that case stands alone in the world. The point was not argued by counsel, and it is against sound reasoning. The point has frequently been raised since,—fully argued, and pointedly overruled.—4 Rand. 547; King v. King, 12 Ohio, 470—see also, 10 Johns. 537, and Attorney Gen'l v. Hall, hereafter cited. It is also contended that the words, equally to be divided between them, has a restraining effect. This point has also frequently been overruled, but authorities are not necessary, as the point cannot arise in this case. Here the previous words are to Lucy and Benjamin, *and their heirs forever*—so that the words, " *equally to be divided between them,*" if the contingency happened at any time after the death of Lucy or Benjamin, their heirs would take their place. The words, equally to be divided, &c., refer as well to the heirs as to Lucy and Benjamin. This point, and also the meaning of the word *then*, will be found in a great many of the cases previously cited.

Lastly, the testator did not give Lucy and Benjamin Davis all the estate devised to his daughter, but only such portion as his daugher should " *die* possessed of, or entitled to under the and by virtue of his will." This impliedly gives to the daughter the absolute disposal of all the estate, and renders the limitation over void. In the case of King v. King, 12 Ohio, the words were, "All and every kind of property that might be considered mine in my life-time, and of which the said Christian may be seized *at the time of his death,*" over, &c. Limitation over held void.

In the case of Ide v. Ide, 5 Mass., the words were—" the estate my son P. *shall leave,* to be equally divided between J. and M." Held that J. and M. took nothing. In 10th Johns. 537, the words were—" if my son should die without issue, then all the property *he dies possessed of* to go to B." Held that B. took nothing,—the limitation being void. In 16th Johns., (case of Jackson v. Anderson,) Chancellor Kent says, " these authorities have never been doubted by any court." The case in 4th Rand. 547, the words were, all the estate that shall remain to go to, &c.; held the remainder over void. The cases are numerous on this point.—See Att'y Gen'l v. Hall, 8 Verm. 103; 3 Lomax Dig. 288; 8 Shep. 288; 3 Litt. 413; 3 Ark.; 1 Watts, 390; Fearne on Ex. Dev. 226-7; 1 Jac. & Walk. 154; 11 Wend. 256; Martin & Y. 302; 22 Wend. 137.

F. S. BLOUNT and A. B. COOPER, for the defendants:

1st. The fifth clause gives to the defendants Benjamin and Lucy Ann, a *fee simple* estate by executory devise, in " all the estate" which the infant daughter of testator " may die possessed of or entitled to, both real and personal, under and by virtue of this (his) will." The words of the will are, " if my said daughter shall die, without leaving lawful issue from her body, &c." By the rules of the common law, no remainder could be limited over, after a limitation in *fee simple*, nor a freehold be created to commence *in futuro*.—Cruise's Dig. Tit. Devise, c. 17, § 1. An executory devise is such a disposition of a man's property by will, that thereby no estate vests at the death of the devisor, but only on some future contingency.—Cruise's Dig. *supra;* 2 Blacks. Com. 173. The words " without leaving lawful issue of her body," must be confined to issue living at the time of her death.—Forth v. Chapman, 1 Peere Wms. 663; Crooke v. De Vandes, 9 Vesey, 196; Peake v. Pegden, 2 Term Rep. 320; Porter v. Bradley, 3 ib. 143; Atkinson v. Hutchinson, 3 Peere Wms. 258; Beauclerk v. Dormer, 2 Atkyns, 308; Read v. Snell, ib. 646; Lamplay v Blower, 3 ib. 396; Sheppard v. Lessingham, Ambler, 124; Millege v. Lamar, 4 Dessaus. R. 617; Jones & Wife v. Price & Wife, 3 ib. 165; Roe v. Jeffrey, 7 Term Rep. 589; Bell & Wife v. Hogan, 1 Stew. 536; Davidson v. Davidson, 1 Hawk. Rep. 163; Woodley v. Finley, 9 Ala. 716; Ram. on Wills, p. 50 to 55, (side p. 91 to 100;) Ward on Legacies, 122 to 124, (side p. 238 to 239;) Rathbone v. Dyckman, 3 Paige's Ch. Rep. 30; Sabbarton v. Sabberton, cases in *tem.* Talbot, 245; Smith v Horlock, *et. al.* 7 Taun. Rep. 129; (2 E. C. L. Rep. 49;) Anderson v. Jackson, 16 Johns, Rep. 382; Lyon v. Burtis, 20 ib. 483; Jackson v. Chew, 12 Wheat. R. 153; Jones & Wife v. Heirs of Spaight, 1 Car. L. Rep. 544; 8 Peterdorff, Com. Law, 214; Burnfield v. Wetton, 2 Bos. & Puller, 324; McGraw v. Davenport & Wife, 6 Por. 319; Pell v. Brown, Cro. Jac. 590.

2. "If my said daughter shall die without leaving lawful issue from her body, then I will and ordain that all the estate which she may die possessed of or entitled to, both real and personal, under and by virtue of my will, shall go to and be equally divided," &c. It is contended by the plaintiff in error, that the words

Flinn v. Davis et al.

" die possessed of" give an absolute property, and mean the same as the words "leave at her death," showing that the estate was intended to be absolute in the daughter with full power to dispose of the same. Wrested from the context, and disregarding the remaining words in the same sentence, there certainly might be some plausibility in the assertion.—Attorney General v. Hale, Fitzgibbon, 114 ; Ide v. Ide, 5 Mass. 500 ; Jackson v. Robins, 16 Johns. R. But in connection with the rest of the words of the devise, such construction would do violence to both the language and intention of the testator.—Miller v. Williams, 2 Dev. & Bat. Rep. 500. The question then may be thus stated. What is the amount of the estate given by executory devise to his nephew and niece by the testator? Answer in the words of the will : " All the estate, both real and personal, which my daughter may die possessed of or entitled to, under and by virtue of my will." Now it is clear that the words "or entitled to" refers to " all the estate" which she takes under and by virtue of the will. The words " die possessed of or entiled to," are words of description of the time when the devise over is to take effect, and any other construction defeats the plain and manifest intention of the testator, that failing issue of his daughter at the time of her death, his property should go to persons of his own blood, viz: his niece and nephew. He had made an equal division of all his property between his wife and daughter. Had it been the intention of the testator, that the mother or her children by a second marriage should be entitled, on the death of the daughter without issue, he would have so declared his intention. The evidence is full to show that he anticipated a second marriage by his wife, and that the portion of his property devised to his dsughter, in the event of her death without issue, was to be kept among his own relations. But we contend that the words " die possessed of," if standing alone, would not defeat a limitation over of the personal estate.—Smith v. Bell, 6 Pet. R. 68. Here they are qualified and explained by other words of description super-added, "or entitled to under my will." When to these is annexed " all the estate she is entitled to under my will," it shows that no power to dispose of any portion of "all his estate" was intended to be given to the daughter. Until the future contingency happened, upon which the absolute estate was to vest, viz: issue of her body living at her death, and not until.

then, the estate would be absolute.   Before these two' events, first, issue of her body, and second, issue of her body living at her death, occurred, no absolute estate could exist under' the will; the contingencies not having happened by which the estate was to become a vested one.—Jackson v. Chew, 12 Wheat. R. 153.   It was held in the case of Jones & Wife v. Heirs of Spaight, 1 Car. L. Rep. 544, that there being no estates tail known to the laws of North Carolina, that the words "without leaving lawful issue," in a will, created a good executory devise of lands.   The court say " in the British decisions where a different construction is given to words as they apply to real or personal estatate, an estate tail is given expressly or by implication to the first devisee, and where the happening of the contingency is plainly tied up to the death of the first devisee, it has been construed an executory devise, and not a remainder dependent on an estate tail.—7 Term R. 589, and the case of Pells v. Brown, Cro. Jac. 590, a leading one on executory devise, fully illustrate the doctrine."   The authorities cited by complainants' counsel show that the phraseology of the wills upon which the decisions are made, is materially and widely different from the terms employed in this.   In the case of Jackson v. Robins, 16 Johns. R., where the cases are collected and reviewed by the Chancellor, there was an express power given to Lady Sterling, the first taker, to dispose of the property.   This of course gave an absolute and unqualified right of dominion in and over the property, which made any subsequent limitation of the same estate in the will, repugnant to the estate already given. This decision was in accordance with that class of cases cited to sustain it, because the principle which applied to it, and deducible from those cases, is this; that the absolute right of disposition in the first taker of the property devised, which right takes effect immediately on the death of the devisor, defeats a limitation over, of the same property.—Read v. Snell, 2 Atkyns Rep. 647, S. In the leading case, Attorney General v. Hall, Fitzgibbon, 114, the words are, —devised "so much of his real and personal estate, as his son should be possessed of at his death."   This case is explained by Lord Hardwicke, Read v. Snell, 2 Atkyns Rep. 647; Ide v. Ide, 5 Mass Rep. 500—" Shall die and leave no lawful issue, what estate he shall leave to be equally divided, &c." —Jackson v. Robins, 16 Johns.   " A. devises all his real and

personal estate to his wife, and in case of her death, without giving &c., by will, or otherwise selling, or assigning the estate, &c." From the words employed in the above cases, it is seen that they are materially different from, and do not contain the words of the will under discussion. They therefore can have no application as the decisions are confined to the express words. The words of Davis's will are of an entirely different and distinct meaning. They are used as words of description of the property intended to be devised over, viz: "all the property conveyed by his will to my daughter, whether in her possession, or otherwise at her death." He intended that all given to her by the will, should go over on the contingency of her leaving no issue at her death.—Cowper v. Cowper, 2 Peere Wms. R. 741. It is argued that an absolute estate vested by the terms of the 2d, 4th, and 7th, clauses of the will. It is a sufficient answer to say that this proposition can be sustained alone, by disregarding the fifth clause limiting and defining the estate given to the daughter. To do so, would be in effect, for the court to make the will of the testator. Suppose the daughter had married and her husband had sold portions of the personal property to A., B., and C., and the daughter died without issue of her body, having in her possession a few of the slaves only. The will says that the slaves "she died possessed of," as well as "all the estate she was entitled to, both real and personal, under and by virtue of my will," shall go over to the executory devisees. The words "die possessed of," are likewise descriptive of the time when the executory devise is to take effect. It is, as if the testator had said, "at the death of my daughter without leaving issue, then my nephew and niece, are to take all the property, both real and personal, which she had in possession, or was entitled to under my will." Words and limitations may be transposed where warranted by the immediate context or scheme of the will. "If my said daughter shall die" means "when my said daughter," &c.—Smart v. Clark, 3 Eng. Ch. Rep. Con. 437 ; 3 Russell, 365. The word "then" is an adverb of time.—Penberry v. Elkin, 1 P. Wms. 564 ; Bell & Wife v. Hogan, 1 Stew. 536. The word "issue" may mean "children."—Maddox v. Stains, 2 P. Wms. 422. Adopting these substituted terms as the meaning of the language of the will, it will read thus : [" If, "] when my said daughter shall die without leaving ["issue,"] children,

["then"] at her death, all the property in her possession, and all the estate she is entitled to under the will, shall go over, &c. The act of 1812, (Clay's Dig. 157, § 37,) discharging fee tails in lands and slaves of their condition, defeats the creation of estates tail, and simply means that words creating estates tail heretofore, shall hereafter create estates in fee simple, and in this case is conclusive to show that the issue of the daughter, if living at her death, would take a fee simple in the estate, and not a fee tail. The Supreme Court of North Carolina, in construing a statute of a like kind in that State, say—" We do not believe there is any thing in the idea, that the words of the will created an estate tail in G. M. Leach, which the act of 1784 instantly converted into a fee simple, for we think since that act a fee tail cannot for a moment exist; that the words which before that act created an estate tail, since create a fee simple; for it is certainly as competent for the Legislature to declare the import of words, as it was for the founders of our own unwritten or common law; and it is by law, either statute or common, that particular words create particular estates.—Jones & Wife v. Spaight, 1 Car. L. Rep. 544; Clapp v. Fogleman, 1 Dev. & Bat. 466.

As to the rules of law by which wills are to be construed —and first of the intention: From a view of the whole will it is clear, and will not admit of a doubt that the testator intended that the property given to the daughter, in the event of her death without children, should go to persons of his blood. The liberal provision made for his wife, by giving to her one half of the property—and no intention that the mother should afterwards, on the death of the daughter, succeed to any portion of the estate bequeathed the daughter, manifestly shows that the testator did not intend that any child of the mother by a subsequent marriage should inherit to his child. Were this doubtful, the evidence supplies the necessary proof. See testimony of Mrs. Roane and John R. West. In the case of Perrin v. Blake, reported in 4 Burrows, 2579, and 1 Blacks. Rep. 672, it was laid down as a principle "that the intention of the testator should be the rule of construction in all cases of devises, and that such intention when explained should control the legal import of any term of art."—See also, Forth v. Chapman, 1 P. Wms. 666. Mr. Justice Buller, in speaking of this rule of intention says—" This is the first and great rule in the exposition of all wills, and it is

a rule to which all others must bend." Further, "I know of no case which says that a technical sense of any words whatever, shall prevail against it."—Hodgson v. Ambrose, Doug. 327. Lord Thurlow refering to Mr. Fearne's discussion of the doctrine of contingent remainders, adopts this as his conclusion "that the Court of Chancery will go any length possible, to carry the intention of the testator into execution, for the benefit of those to whom the testator designed a benefit.—Knight v. Ellis, 2 Bro. 66-557. Lord Alvanby while Master of the Rolls, in the case of Thelusson v. Woodford, 4 Ves. 329; holds the following language: "I know only one general rule of construction equally for Courts of Equity and Courts of Law, applicable to all wills. The intention is to be collected from the whole will taken together. Every word is to have its effect. Every word is to be taken according to its natural and common import."—See also, Ram. on Wills, ch. 3, 6, 11, 12. Secondly. To effectuate the intention of the testator words and limitations may be transposed, when warranted by the immediate context, or the general scheme of the will.—East v. Cook, 2 Ves. Sen. 34; Moseley v. Massey, 8 East, 149; Marshall v. Hopkins, 15 ib. 389; Spark v. Purnell, Hobart Rep. 189; (s. p. 75.) As cases more particularly applicable to the will of Davis, the following authorities are brought to the notice of the court.—Cadogan v. Ewart, 34 Eng. Com. Law, 187; Pells v. Brown, Cro. Jac. 590; Targett v. Gaunt, 1 P. Wms. 432; Pinberry v. Elkin, ib. 564; Porter v. Bradley, 3 Term R. 143; Forth v. Chapman, 1 P. Wms. 663; Roe v. Jeffrey, 7 Term R. 589; Peake v. Peyden, 2 ib. 720; Atkinson v. Hutchinson, 3 P. Wms. 258; Read v. Snell, 2 Atkyns, 646; Lampley v Blower, 3 Atk. 396; Sheppard v. Lessingham, Ambler R. 124; Sabbarton v. Sabbarton, Talb. cases 245; Barnfield v. Wetton, 2 Bos. & Pul. 324; Kedy v. Fowler, 6 Bro. Parliamentary Cases, 309; Gordon v. Adolphus, ib. 357; Jones v. Price, 3 Dessaus. R. 165; Duun & Wife v. Bray, 1 Call R. 294; Millege v. Lamar, 4 Dessaus. R. 617; Royal v. Eppes, 2 Munf. R. 479; Rathbone v. Dyckman, 3 Paige, 30; Newton v. Griffith, 1 H. & Gill. 111; Anderson v. Jackson, 16 Johns. 382; Dullum v. Dullum, 7 H. & Johns. 220; Lyon v. Burtis, 20 Johns. 483; Dunn v. Taylor, 2 South. R. 413; Fosdick v. Cornell, 1 Johns. 440; Manigault v. Deas, 1 Bail. Eq. R. 298; Cruger v. Haywood, 2 Dessaus. 94;

Carr v. Green, 2 N. & McC's. R. 84, *et. seq.*; Moseley v. Cubier, 3 A. K. Marsh. R. 289; Ferrill v. Talbot, Riley's Eq. Cases, 247; Moses v. Howe, 4 Monr. R. 139; Langley v. Heald, 7 W. & S. R. 96; Wilkes v. Lyon, 2 Cow. 333; Fearne on Rem. 398; Jackson v. Chew, 12 Wheat. 153; Davidson v. Davidson, 1 Hawks, 163; Smith v. Bell, 6 Pet. 68; Jones v. Spaight, 1 Car. L. Rep. 544; Lippet v. Hopkins, 1 Gall. C. C. Rep. 454; Clapp v. Fogleman, 1 Dev. & Bat. Eq. Cases, 466; Zollicoffer v. Zollicoffer, 4 Dev. & Bat. R. 438; Miller v. Williams, 2 ib. 500; Bell & Wife v. Hogan, 1 Stew. 536; Bouler v. Doyle, 7 Ala.—See case Lee v. Craigen, 8 Leigh's Rep. 449, cited by Mr. Taylor, and particularly of words of devise, and page 453. This case sustains Jones v. Spaight, 1 Car. L. R. 544, and Zollicoffer v. Zollicoffer, 4 Dev. & Bat. 438.

DARGAN, C. J.—We think the testimony fully establishes that the will was duly executed, and that the testator was of sound mind. It is, therefore, only necessary to examine the questions growing out of its construction.

By the second and fourth clauses of the will, the testator willed and devised to his infant daughter, then unmarried, and to the heirs of her body, certain lands, a number of slaves, with other personal property; also, all the money he might die possessed of, or that might be due to him at the time of his death. The fifth clause of the will is in the following language—"If my said daughter should die without leaving lawful issue from her body, then I will and ordain that all the estate which she may die possessed of or entitled to, both real and personal, under and by virtue of my will, shall go to and be equally divided between Benjamin Davis, the son, and Lucy Ann Davis, the daughter of my brother Sugar Davis, and to their heirs, and to hold the same share and share alike forever." The widow of the testator married after his death, and the complainant, who was born before the death of the infant daughter of the *testator*, is the issue of that marriage. The devisee died in 1844, in infancy, without issue, and the executors paid and handed over to the guardian of Benjamin and Lucy Ann Davis, the share of the personal estate to which she was entitled under her father's will. The object of this bill is to recover from them all they received from the executors, on the ground that the infant daughter took under

the will a fee simple estate in the land, and the absolute right to the personalty, which on her death descended to her heirs, and did not go over by the will to Benjamin and Lucy Ann Davis. It is contended by the plaintiff that the contingency, upon which Benjamin and Lucy Ann Davis were to take under the will, is too remote; that the words, " *die without leaving lawful issue of her body*," mean an indefinite failure of issue, and do not limit the intention of the testator to issue living at the death of his infant daughter. If these words were now to be construed for the first time, and a legal meaning affixed to them, there is perhaps no one conversant with the English language, who would not at once say that the testator meant issue living at the death of his daughter, that is, he intended if his daughter died and left issue, such issue should take instead of Benjamin and Lucy Ann; but if she left no issue living at her death, then and in that event only, the property should vest in Benjamin and Lucy Ann Davis—that the expectation or right of Benjamin and Lucy Ann, ever to succeed to the property was entirely cut off, if the infant daughter of the testator had issue living at her death, in whom it could vest. This is the plain and natural meaning of the words. But it is said that these words have repeatedly received a different judicial construction, and on this construction titles to property, and the rights of many in the community, depend; that the courts are bound by such construction and cannot depart from it, without introducing a new rule of property, destructive of the vested rights of those, who quietly repose, believing themselves secure in their possession, as they hold in accordance with the judgments of the highest judical tribunals of the country.

I frankly admit that if words in a will or deed have uniformly had attached to them a specific meaning by the judgments of our courts, we must continue to apply the same meaning to them, notwithstanding this meaning might, in our opinion, be different from the natural import of the words; otherwise titles to property would become uncertain, and the judgments of our courts would be as it were snares to entrap those who rested with confidence on them. Laying aside then the plain and natural import of the words used in this will, let us examine the construction that has been placed on them by our own courts, and

the courts of England, whence we derive our notions of the common law.

After the best examination I can give to the English authorities, I find that the words used in this will, or other words of precisely similar import, have for more than one hundred years been construed to mean issue or children living at the death of the first taker, *when applied* to personal estate; and the same words, when applied to real or freehold estate, have been construed to mean an indefinite failure of issue, and *to create* an estate tail in the first taker by implication; or if an estate tail was expressly created by other words, then the words in this will would not be so construed as to limit it to an estate for life, but would be construed to mean an indefinite failure of issue at any time, however long, after the death of the first devisee. It would be useless, if not impracticable, to review in this opinion, all the cases I have examined, but I propose to notice briefly some of the leading ones. The first I shall advert to is Atkinson v. Hutchinson, 3 P. Wms. In that case Edward Baxter being possessed of a term for years, devised the premises to trustees in trust, first *to* keep them in repair, and *to* pay the overplus to Sarah, his wife, for life, if she should so long continue a widow, and after her death, or second marriage, for the use of such children as the testator should *leave living at his death*, equally amongst them; and in case any of his children should die *without leaving any issue*, the share of him or her so dying to be divided between the survivors; and if all his children died *without leaving any issue*, then to the use of John Hutchinson. All the children of the testator died leaving no issue, and the question was whether the bequest over to Hutchinson was too remote. The Lord Chancellor held that the words, *die without leaving issue*, must be intended to mean issue living at the death, and consequently that the devise over to Hutchinson was not too remote. In the opinion pronounced, the Chancellor adverted to the distinction between a devise of real, and a bequest of personal property. He admitted that if the devise had been of freehold estate, the limitation over would have been too remote, but as it was personal property, the court laid hold of the word *leaving*, as indicative of an intention of tying up, or limiting the contingency to the death of the first taker; that is, *it meant issue living* at the death of his children, or surviving child. In the case of Read

v. Snell, 2 Atkyns, 646, the subject matter of the bequest was personalty, and the language was, "and in case my daughter should die leaving no heirs of her body," then over to others. Lord Hardwicke decreed the bequest to be good, and relied on the word *leaving*, as showing that the testatrix meant heirs of the body, living at the death of the daughter. Lord Hardwicke examined many of the decisions in the opinion delivered, and particularly the case of Forth v. Chapman, 1 P. Wms., in which the language of the will was " and if my said nephew shall depart this life and leave no issue of his body, then over." Lord Macclesfield held the bequest over of the personalty to be good, relying on the word *leave*, and Lord Hardwicke said, that this decree had never since been impeached.

In the case of Goodtitle on the demise of Peake v. Peyden, 2 Dunf. & East, 720, the testator devised a chattel interest to P. and to the heirs lawful of him forever, but in case he should happen to die and leave no lawful heir, then over. It was decided that lawful heir in this will meant heir of the body, and that the word *leave* limited the contingency to the death of the first taker, and it was therefore good as an executory devise. In the case of Forth v. Chapman, 1 P. Wms., 663, the testator gave both real and personal estate to his two nephews, and if either of them should depart this life and leave no issue of their respective bodies, then he gave the property devised over to other persons. Lord Parker, on appeal from the judgment of Sir Joseph Jekyll, said—" If I devise a term to A., *and if he die without leaving issue*, remainder over, this must be intended, if A. die without leaving issue *at his death*, and then the devise over *is good;* and although both real and personal estate was conveyed by the same words in the same will, yet, in reference to the realty, they were held to mean an indefinite failure of issue, but, in regard to the personalty, they were held to mean a *definite failure*, that is, a failure of issue at the death of the first taker." In the case of Sheffield v. Lord Oweny, 3 Atkyns, 288, the words of the will, on which the question arose, were, and "leave no issue behind him," then over. Lord Hardwicke held that, in regard to the real estate, the contingency was too remote; but in reference to the personal property, they meant issue living at the death of the first taker, and in the opinion delivered, he said, I do not see any reason why the same words in the same will

Flinn v. Davis et al.

may not receive different constructions; to say they cannot is contrary to the case of Forth v. Chapman. In the case of Croake v. De Vandes, 9 Ves. 197, both real and personal estate was devised to a grandson and the heirs of his body, but should he die and *leave no such heirs*, then over. The case was argued for the remainderman by Mr. Lloyd, Mr. Richards and others, and on the other side by Mr. Mansfield, Mr. Romily, and Mr. Cooke, who relied on the authority of the case of Porter v. Bradly, as overruling the distinction taken in the case of Forth v. Chapman. In the opinion delivered by Lord Eldon, he said, "when I read the case of Porter v. Bradly, speaking with all due deference to the learned Judge who expressed that *dictum*, it appeared to me that it went to shake settled rules to their foundation. I had heard the case of Forth v. Chapman cited for years, and frequently by Lord Kenyon himself, as not to be shaken." He decreed the limitation over of the *leasehold to be good*, and said that the words "*and leaves no such heirs*," had received a settled construction, when used in reference to personal estate, to mean dying without issue living at the *death*. But the cases are so numerous, that I cannot advert to all of them, and I will content myself by reference to the case of Doe on the Demise of Cadagan v. Ewart, 7 Adol. & Ellis, 636. In this case the words of the will, on which the question arose, were, "but in case it should happen that my said daughter Isabella should depart this life without leaving issue lawfully begotten," then over to others. Lord Denham pronounced the opinion of the court, after the cause had been held under advisement for several months. He reviewed all the decisions relied on as impugning the authority of the case of Forth v. Chapman, and the result of his judgment was that the principle recognised in that case was the settled law, and never had been overruled, although some of the judges had by way of *dicta* doubted its authority. In this opinion, which was delivered in 1837, the court of Kings Bench concurred, and I think I may safely assume, that it was the settled law of England, that where personal property is given by will to one, or to one and the heirs of his body, and to the gift is added the words, if he die without leaving issue, or, if he die and leave no issue, then over; that the word *leave* will limit the contingency to the death of the first taker, and will not be construed to mean an indefinite failure of issue, and therefore the remain-

Flinn v. Davis et al.

der over will be good by way of executory devise.  It may be as safely said that if these same words are used in reference to real estate, that they would be construed to mean an indefinite failure of issue.  Thus stood the law in England until an act of Parliament was passed, which declared that the words die without issue, or without leaving issue, whether used in reference to personal or real estate should be construed to mean a failure of issue at the time of the death of the first taker.  At an early period of our judicial history, this court held that when a testator loaned slaves to his daughter during her life, and if she leaves heirs of her body, then to such heirs, and for the want of such heirs, then over; that the bequest over was not too remote, and that it was the intention of the testator to limit the contingency to the death of the first taker.—Bell & Wife v. Hogan, 1 Stew. 536. Again, in the case of Doyle v. Bouler, 7 Ala. 246, a testator after making some other bequest, used the following language —"And the rest of my estate, negroes, household goods, &c., I give unto my wife Anna Fowler, during her life and widowhood, and at her death to be equally divided among my six children; if any of my children die before my estate is divided, their children lawfully begotten to stand in their place, and if any of my children die *leaving no heirs* lawfully begotten of their bodies, their part must be equally divided amongst the rest of my children, and their children lawfully begotten."  After making some further provisions as to the manner in which he desired his slaves treated, the testator declared that the slaves were only lent to his children, and given to his *grand-children*.  This court held that the devise over was not too remote.  The Chief Justice, who delivered the opinion of the court, said, "the term heirs of the body, in the sense they are here used, are words of purchase, and do not postpone the period of the failure of the heirs of the first taker to a period beyond his death.  This is satisfactorily shown by the words *die* and *leaving*, and the declaration that he loaned the slaves to his children and gave them to his grand-children."  It is true, that in both these cases the testator expresssd the intention to loan the slaves to the first taker for life, but I apprehend that although the word loan was used, yet it must be considered as a gift for life, and had the word give been only used, the limitation over would have been held good.  These two decisions of our own court sanction the rule of construction that has ob-

tained in England for more than one hundred years, that where the subject of the bequest is personalty and the limitation over is created by the words *die without leaving issue*, or, die and leave no issue, the word *leave* will limit the contingency to the death of the first taker. I now propose to examine some of the decisions of our State courts, and here I will express my regret that we find conflict that cannot be reconciled ; and if I had to rely on them *alone for authority*, or as lights to guide me to a conclusion, I should feel disposed to disregard *all of them* and to pronounce my own opinion on the law of the case, irrespective of precedent. It is a little strange that there should be such conflict on a question governed purely by the common law, but the very existence of this difference in the opinions of the most intelligent courts of the Union, who derive their notions of the common law from the same source, shows us the propriety of resorting to, and examining for ourselves the common source whence we derive the common law, and not to rely with too much confidence on the examination of others. The bequest in the case of Cudworth v. Hall, 3 Dessaus. 256, was of personal property, and the testatrix, after giving it to her two nephews and their heirs and assigns forever, added, "but in case both my nephews *die without leaving* issue of their bodies," then over. The bequest over was held good as an executory devise. To the same effect is the case of Clifton v. Haig, 4 Dessaus. 330. In the case of Moore v. Howe, 4 Monr. 149, the bequest was personalty, and the Supreme Court of Kentucky, after an elaborate examination of the question, held that the words *leaving no lawful issue* would limit the contingency to the death of the first taker.—In the case of Robert v. Jones, 4 Iredell, 53, the same construction is put on the words die without *leaving issue*, the bequest being of *personalty* ; and in the case of Jones v. Speight, 1 Car. L. Repos. 544, the Supreme Court of North Carolina held that the words without *leaving issue*, when the bequest was of personalty, limited the contingency to the death of the first taker, and as estates tail were abolished in that State, they would lay hold of the same words in a will devising real estate, as indicative of the intention of a definite failure of issue, that is, a failure of issue at the death of the first taker. There are some of the American cases that may be cited, which recognise the rule, that if the bequest is of personalty and the

Flinn v. Davis et al.

remainder over is created by the words, die and leave no issue, or, die without leaving issue, the court will attach to the word *leave* or *leaving*, the intention of a definite failure of issue, and hold that it limits the contingency to the time of the death of the first taker.

On the other hand, some of the American cases hold that the word leave or leaving, when used in reference to personal estate, does not limit the contingency to the death of the first taker, but denotes an indefinite failure of issue. One of the leading cases is Patterson v. Ellis, 11 Wend. 259. In this case, the limitation over was created by the words, die without leaving lawful issue, and the bequest was of personalty. It was decided that the limitation over was too remote, and the first taker had the absolute right to the whole. But I submit that any unbiased mind, after an examination of the English authorities, and keeping in view the distinction between personal and real property, must pronounce that Judge Savage, who delivered the opinion of a majority of the court, is not sustained by authority. The error of his argument is in this; he argues that if the subject matter of the devise had been real, instead of personal property, the devise would have been construed as creating an estate tail, and therefore, as it was personalty, the contingency was too remote and the remainder void, without adverting to, or allowing the distinction that has long prevailed, that although the courts would hold the words to create an estate tail, if used in referenca to real estate, yet if personal property was the subject of the devise, they would struggle hard to limit the contingency to the death of the first taker, in order to give effect to the whole will, and for this purpose the word *leave or leaving*, when used in reference to a bequest of personal property, has uniformly been held sufficient to justify the court in holding that the testator intended to limit the contingency to the death of the first taker. The reason of this distinction between real and personal estate was, that the common law not only permitted estates tail, but they were a favored species of estates, and by construing the words used in this will as creating an estate tail, they gave effect to the devise over as a contingent remainder expectant on the ultimate failure of issue of the first taker; that is, they

would hold that the first taker took an estate tail and the devisee over—a contingent remainder expectant on the failure of the heirs of the body of the first taker. But, as no estate tail could be created in personal property, in order to give effect to the whole will, they would lay hold of words, as indicative of the intention of a definite failure of issue, which would not have that effect, when used in reference to real estate. By this mode of construction effect was given to the devise over, whether it consisted of personal or real estate, and the courts supposed they were carrying out the intention of the testator. For instance, if the devise was of real estate, the first object of the testator's bounty was supposed to be the first devisee, and if he should die leaving issue, but this issue afterwards failed, it was supposed that the testator intended that the remainder-man should then take, and to effectuate this intention, which was lawful in reference to real estate, they construed the devise as an estate tail, with a contingent remainder over, which ultimately might carry the estate to the remainder-man unless barred or destroyed. In reference to personal property, however, the bequest over must take effect, if at all, as an executory devise, and supposing that the testator intended the devisee to take at some time, and as he could not take, unless the intention was that he should take at the death of the first taker, or within twenty-one years and a fraction over, and the courts, for the purpose of giving effect to the intention and to prevent its being defeated altogether, in reference to the remainder, held many circumstances and expressions, as indicating a definite failure of issue and limiting the contingency to the death of the first taker, that would have been overlooked, or disregarded in devises of real estate. Hence arose the distinction, that the same words in the same will in reference to real estate would be construed as an estate tail, but in reference to the personalty devised, would be construed as an executory devise, dependant on the failure of issue of the first taker at the time of his death. Whether it was wise to draw such a distinction between real and personal property, it is unnecessary to enquire. It has been done, and has been sanctioned for more than a hundred years. We are therefore bound to hold that the devise over, so far as it relates to the personalty, is not too remote, but is good as an executory devise.

But the question now arises, what construction shall we give

11

to the will, so far as it relates to the realty ? In England the infant daughter of the testator would have taken an estate tail, and the contingency, on which the devise over is made to depend, would have been considered too remote, and Benjamin and Lucy Ann Davis could not have claimed the land by way of executory devise, but could have claimed it by way of contingent remainder. In this State, however, estates tail are not permitted to exist, and words, that at the common law would give an estate tail, here create an estate in fee. If we must therefore construe this will as creating an estate tail in the infant daughter of the testator, and the devise over too remote to take effect as an executory devise, then we should be compelled to deny the right of Benjamin and Lucy Ann Davis to the land, for the infant daughter, under our statutes, would have taken the entire fee. The courts of England were inclined to construe all devises of real estate as creating estates tail, if it could be done without violating the intention of the testator, because such estates were not only permitted, but were a favored species of estates at common law. In this State, however, estates tail are abolished. Lands, like personalty, descend to all the heirs, share and share alike; they are liable to be sold absolutely for the payment of debts, and the legislation of our country has gone far to put them on the same footing with personal property. Under this legislation are we to pursue the distinction taken in the case of Forth v. Chapman, or are we to repudiate it ? This is the first time the question has ever been raised in this State, and we are therefore at liberty to examine it on principle. The reason that influenced the English judges to construe the same words, in reference to land, so as to create an estate tail, whilst they would hold them to create a good executory devise as to personalty, was to give effect to the devise over in both instances, presuming such to have been the intention of the testator. If the subject of the devise was realty, as it was lawful to create an estate tail, they presumed such to have been the intention of the testator, for by so construing it, the devise over might ultimately take effect and carry the estate to the last devisee in the shape of a contingent remainder expectant on the determination of the estate tail, and it was one of the cardinal rules in construing devises over, not to construe them as executory devises, if, by any means, they could take effect as a contingent remainder. But in reference to personalty

no estate tail was permitted, and the devise over could only take effect by construing it to be an executory devise. For the purpose, therefore, of giving effect to it, the courts caught hold of many expressions, as indicating the intention of a definite failure of issue, that would have been disregarded, had the devise been of land. Thus they carried out the intention of the testator, both as to real and personal property. If we, however, follow the distinction of Forth v. Chapman, and hold that the same words are insufficient to create a good executory devise of real estate, that are sufficient in personal property, we shall not be governed by the reasoning that influenced the courts of England in drawing the distinction; but, on the contrary, we must presume an unlawful intent on the part of the testator in reference to the land, and a lawful intent in reference to the personalty, and thus we should put both a lawful and unlawful intent on the same words in the same will, and thereby defeat the devise over of the realty. The distinction was drawn to prevent the devise over from being defeated, *as to either the real or personal estate.* Shall we follow it, after the reasons for its existence cease, for the purpose of defeating the devise over? I am clearly of the opinion that we should not, but that we should hold that the same words, which will create a good executory devise as to personal property, will also be sufficient in this State to create a good executory devise as to land. In this conclusion I am sustained by two decisions of the Supreme Court of North Carolina. In Jones v. Speight, 1 Car. L. Repos. 544, in which the devise was of land, and the language of the will creating the devise over, was *die* without leaving issue, the court held that, as entails had been abolished, there was no reason for following the distinction of Forth and Chapman, but that the same words should be construed to create a good executory devise, whether of land or personal estate. In Zollicoffer v. Zollicoffer, 4 Dev. & Bat., the devise was of both real and personal estate, and it was admitted that the words of the devise would have created an estate tail in England as to the land, but that they would have been construed as a good executory devise as to the personalty. The court held the same doctrine recognised in Jones and Speight, and as the words of the will were sufficient to create a good executory devise as to the personalty, therefore they were deemed sufficient to create a good executory devise as to the realty.

These decisions we think a just exposition of the law, where estate tails are not permitted, and fully sustain us in our judgment, that the words of this will do not mean an indefinite failure of issue, but, on the contrary, that the testator contemplated issue living at the death of his infant daughter. The contingency therefore is not too remote.

2. But it is contended that the first taker had the power under the will to dispose of the whole estate, real or personal, or any part of it, for her own use, and that such a power is inconsistent with an executory devise, and shows that the testator intended to give the entire estate to his infant daughter absolutely and unconditionally. I admit that the absolute power of disposition would be inconsistent with the nature of an executory devise, and would show that the intention of the testator was to give to the first taker the entire estate, unless a bare life estate was given with a naked power of appointment in favor of others, which is clearly not the case here. The question, therefore, is, does the will give the infant daughter of the testator the right to sell or dispose of the property devised, at her own pleasure and for her own use? In the case of the Attorney General v. Hall, Fitzg. 314, the devise was of real and personal estate to the son of the testator and to the heirs of his body, and if he should die leaving no heirs of his body, then so much of the estate as he *should be possessed of at his death* was devised over. The son suffered a common recovery of the real estate and made a will as to the personalty, and died without issue. It was held that the limitation over was void, because the absolute ownership was with the first taker, who had by the terms of the will the right to dispose of the whole. Again, in the case of Brewster v. Bull, 10 Johns. 18, the devise was of land, and the language of the will was, " in case my son should die without lawful issue, the said property he dies possessed of, I will to my son Y." The Supreme Court of New York held the limitation over void, because it was repugnant to the absolute ownership resulting from the right to dispose of the property. So in the case of Ide v. Ide, 5 Mass. 500 : The devise was to Peleg Ide and his heirs, and assigns forever, and to the devise are added the following words: " and if my son Peleg shall die and leave no lawful heirs, what estate he shall leave to be equally divided between my son John Ide and my grand-son Nathaniel." Chief Justice Parsons said

that the limitation over is not of the estate devised, but of what Peleg should *leave*. From this expression it is clear that the testator intended that Peleg should have an unqualified power to dispose of the whole. And he held that this power of disposition was inconsistent with the devise over, and showed that the entire estate vested in the first taker. Many other authorities might be cited to the same effect, but it is unnecessary, as it is well settled, that if the first taker has the power, by the terms of the will, to dispose of the property, he must be considered as the absolute owner, and the limitation over void. The words of this will, however, are: "If my said daughter should die without leaving lawful issue from her body, then I will and ordain that all the estate which she may die possessed of or entitled to, both real and personal, under and by virtue of my will, shall go to, and be equally divided," &c. If we ask the question, what estate or property did the testator devise over, the answer will be all his daughter was possessed of at the time of her death, and all that she was entitled to under the will. What then was the meaning of the testator? Did he intend to devise over only such as she might be possessed of? I think not. But he intended to give over, not only such as might be in her possession at the time of her death, but all that she took under the will, whether in her possession or not. Had the testator stopped at the words, "possessed of," this case would have fallen directly within the case of Jackson v. Bull, 10 Johns. 18, but he adds the words, or entitled to under and by virtue of my will. These words enlarge the devise over, and in my opinion were designed to embrace all the estate that his daughter should be entitled to receive from the hands of his executors under the will. The language at least is capable of this meaning, and by thus construing it, we carry out one of the obvious designs of the testator, by sustaining the remainder over. But by implying from this language an absolute power of disposition, we defeat one of the manifest objects of the testator, and this too, by placing a construction upon language capable of bearing a meaning entirely consistent with the expressed intention of the testator. I hold it to be a sound rule of construction, that if the language be capable of two distinct meanings, one of which would sustain but the other defeat a plain and manifest design of the testator, we should so construe it as to support the manifest intention, and

should not imply an intention repugnant to the expressed will of the testator, unless the language will bear no other reasonable construction. Even then, if it were doubtful whether the testator intended his daughter should have the power of disposing absolutely of all the property he devised to her by the will, this doubt should not defeat the remainder over. That the testator intended to create a valid remainder over is beyond doubt, and the language, from which it is argued he has defeated this remainder, is capable of conveying a meaning that will support it; we cannot therefore defeat the remainder without giving effect to a doubtful intention at the expense of one of the plain and manfest designs of the testator.

[After the delivery of this opinion, at June Term, 1849, the Hon. H. W. COLLIER resigned his seat upon the bench, and the Hon. SILAS PARSONS was appointed in his stead. A petition for a re-hearing was thereupon presented and granted, and the cause was re-argued at the January Term, 1850.]

Since the re-argument of the case, I have deliberately re-examined my opinion, and I trust with the view of ascertaining and applying the rules of law that should govern it, and I am compelled to say that my examination has but confirmed me in my opinion. I must therefore adhere to it, notwithstanding the respect I entertain for the opinions of my brethren. I think they have carried the doctrine of defeating a remainder over, created by an executory devise, by implying an absolute power, or right of disposition, in the first taker, farther than any case that can be found, and, in my humble judgment, by implying a power never designed to be given by the testator.

CHILTON, J.—When this case was first argued, I was unable to agree with the late and present Chief Justices in the conclusion at which they arrived. It has been since re-heard, and having given to it all the consideration which its importance demands, I proceed briefly to state my views of it, which remain unaltered.

The questions before us arise upon the construction of the will of Norphlet Davis, the 2d, 4th, and 5th items of which are as follows:—"Item 2d. I will, and devise and grant, and bargain, to my infant daughter, at this day and date not married, all the lands and premises and appurtenances thereto belonging, which

I may die possessed of or entitled to, to have and to hold the same unto her and the heir or heirs of her body forever, subject however to the provisions and uses above specified in favor of my wife, Elizabeth Ann Davis."

" Item 4th.—I will and bequeath unto my infant daughter, and to her heir or heirs of her body, the following named slaves, viz : Levi, &c." (setting out their names, &c.)  " I also give and bequeath unto my daughter all money, which I may die in possession of, or which may be due me at the time of my death, or thereafter, to become due, either by bonds, notes, mortgages, or in any other manner, together with all other personal property which I may own or be entitled to, at the time of my deanh, and not otherwise disposed of by me."

" Item 5th.—If my said daughter shall die without leaving lawful issue from her body, than I will and ordain that all the estate *which she may die possessed of or entitled to, both real and personal, under and by virtue of my will,* shall go to and be equally divided between Benjamin Davis, the son, and Lucy Ann Davis, the daughter of my brother Sugar Davis, and to them and their heirs, to hold the same share and share alike forever."

The daughter died, leaving no children or descendants of them.  The complainant, who is the heir at law of the daughter, insists that this will vested in her the absolute property ; on the other hand, the defendants, Benjamin and Lucy Ann Davis, contend that the limitation over is good as an executory devise, and vests the property in them upon the death of the first devisee. My opinion is that the remainder over, attempted to be created by the 5th item, cannot be supported as an executory devise, and that the absolute property vested by the will in the daughter of the testator.

The law applicable to the case has been ably commented upon by the counsel on both sides, and the numerous cases cited upon their briefs have been carefully examined.  I do not propose to review all these decisions in this opinion, but merely to state, in as brief manner as I can, the general principles deducible from them as applicable to one view of this case, and which I regard as decisive of it.

1. It is a well settled rule of construction, that " every word of a will must have a meaning imputed to it, if it is capable of a meaning without a violation of the general intent, or of any other

provision in the will with which it may appear inconsistent."—
10 Bac. Abr. (Bouv. Ed.) 533; 1 Ves. (Sumner's Ed.) n. 4,
and cases cited on p. 195. Tested by this rule of construc-
tion, it appears to me perfectly clear, that the fifth item in the
will of Norphlet Davis only gives to the remaindermen so much
of the property bequeathed to his daughter, as should remain un-
disposed of at the time of her death; thus confering upon her
by necessary implication the right of disposing of it. The limi-
tation over is "*of all the estate which she* (the daughter) *may
die possessed of or entitled to, under and by virtue of my will, &c.*"
If it had been the intention of the testator to create an executo-
ry devise over, and consequently to have denied to the daughter
the power of disposing of the property, would he not have omit-
ted the whole of the above italicised expression? Would not
his intention have been clearly expressed by striking these words
from this clause of the will? It would then have read thus:
"If my said daughter shall die without leaving lawful issue from
her body, then I will and ordain that all the estate shall go to
and be equally divided between Benjamin Davis, the son, and
Lucy Ann Davis," &c. If the testator did not intend by the
insertion of these words to limit the devise over to such proper-
ty as the daughter should own at the time of her death, and to
exclude such of it as she had disposed of, he meant nothing.
But the expression is full of meaning,—is plain, simple and un-
ambiguous, and to discard it altogether would do violence to
the plain language of the will and the indisputable rule of con-
struction above stated. Suppose, for the sake of illustration,
the daughter had lived for many years, and that she had actual-
ly sold a portion of the perishable property, assuming to sell the
entirety, and died without issue living at the time of her death,
and that this suit was by the remaindermen against her vendee.
The latter would say in response to their demand, the will un-
der which you claim only gave you the estate which the testator's
daughter should *die possessed of or entitled to under it.* She did
not die possessed of this; it was in my possession; neither was
she at the time of her death entitled to it under the will, because
she had sold it to me, and parted with her title. The court
would then be called upon to construe these words. Could any
court hold that they were mere surplusage? I can see no prin-

ciple which would justify such construction, and should unhesitatingly pronounce in favor of the vendee.

There are several cases which I think sustain the view here taken. In Jackson *ex. dem.* Brewster v. Hall, 10 Johns. Rep. 19, the testator bequeathed to his son, Moses, the premises in dispute, and by a subsequent clause declared, " In case my son, Moses, should die without lawful issue, the said property he died possessed of, I will to my son, Young, his lawful issue, &c." It was held that the limitation over was void as being repugnant to the absolute ownership confered by the will on Moses, as shown by his implied right of disposing of the property.

In the Attorney General v. Hall, Fitzgibbon 314, the bequest over was of so much of the real and personal estate as he (the first devisee,) should be possessed of at his death. The first taker suffered a common recovery as to the land, and made a will of the personal estate, and died without issue. It was held that tail created in the land was barred by the recovery, and that the limitation over of the personal estate was void as repugnant to the absolute ownership and power of disposal given by the will. I have not been able to lay my hand upon this volume, and have quoted the language used by Parsons, C. J., in Ide v. Ide, *supra.* I am, however, cited by the counsel to the decision of the case of Read v. Snell, 2 Atk. 648, where Lord Hardwicke quotes the language thus—" I give the residue to my son, Francis Hall, and the heirs of his body, to his and their own use ; but in case my son should depart this life, leaving no heirs of his body living at the time of his decease, then I give so much of the said residue, *as shall not have been disposed of by my said son, to the Goldsmiths' Company.*" This perhaps gives a clearer indication of the intention of the testator to confer the right of *disposing* of the property upon the son, than the words as quoted by Chief Justice Parsons, but still it is in point to show that where the right of disposition is given by necessary implication, it is inconsistent with the limitation over by way of excutory devise. Besides, the language conveys pretty much the same idea with a slight variation in the phraseology. There is but little difference in the ordinary acceptation of the language used, between " so much as he shall leave undisposed of" and " all that he may die possessed of, or entitled to, &c." Each implies the right of disposition. In Ide v. Ide, 5 Mass. R. 500, the testator made

an absolute gift of real and personal property to his son, and added, that if he should die and leave no lawful heirs, what estate he shall leave, to be equally divided, &c. The limitation there was held to be void, because it was repugnant to the power of disposition impliedly given by the will.—See also, Jackson v. Robins, 16 Johns. R. 537, where the foregoing cases are commented on and approved—see also 11 Wend. 276, and cases there cited.

I repeat, that these decisions, although none of them embrace the exact language used in the will before us, are nevertheless in principle closely allied to it, and they settle very clearly the rule which is recognised also, by various elementary writers, that a valid executory devise cannot exist, where the first taker has the power of defeating the limitation by disposing of the property, whether it be real or personal. Nor does it make any difference whether the first taker has exercised the power of alienation or not, if it be confered; if the clear intent of the testator was to give to the first taker the absolute control of the property, it is inconsistent with, and destructive to the limitation over by way of executory devise.—1 Jarm. on Wills, 786; 2 Saund. 388, *d*, and cases *supra*.

But it is supposed that the adding of the words, " or entitled to under and by virtue of my will," shows that it was the intention of the testator to create a limitation over in the whole of the property confered by the will on the daughter, and that the power of alienation is not therefore confered. If we supply the word "die" in the latter clause of the sentence, (and it is evidently understood) the meaning to my mind is exceedingly clear, and the reason for the insertion of the last clause may very readily be imagined. The sentence would then read thus, " all the estate she may die possessed of, or *die* entitled to under and by virtue of my will," &c. She might not die possessed of some of the estate to which she might be entitled under the will; or it may be that by the latter clause of the sentence, the testator intended to explain more particularly his meaning as expressed in the first, to wit: not that he was bequeathing over all that his daughter might die possessed of, whether it was property which passed to her under the will, or was acquired by her otherwise, as the words taken literally would import, but only such as she should die entitled to under the will. The former hypothesis, however, I

think the more reasonable, and I have but little doubt, suggested the insertion of the last branch of the sentence, as the latter would impose a restriction, which the law would imply without it, and would thus have been wholly useless.

The construction, which I place upon the latter clause of the fifth item of the will, gives effect to all the words, and harmonizes with the general intent of the testator to be gathered from other parts of the will and carries it into effect, so far as it is legal, whereas the contrary construction regards them as surplusage and unmeaning. When the testator, in the second item of the will, desires to designate the lands which he devises to his daughter, he uses similar language"—" all the lands, &c., *which I may die possessed of or entitled to.*" He might have died entitled to land, of which at the time of his death he was not in possession, and hence the propriety of inserting the words " or entitled to." A similar expression occurs in the fouth item, in respect to his personal property. Retaining as the testator did the right of disposing of the property at any time during his life, and of which right, if he had so desired, he could not have deprived himself by any provision in his will, it is clear that he used these expressions as descriptive of the property which should vest in his daughter upon his death, namely, such as he should not dispose of otherwise—as he should " *die* possessed of or entitled to." This is persuasive to show that kindred expressions occurring in the succeeding clause of the will were used and should be understood in the same sense.—2 Chan. Cases, 169; 2 Ves. 616; 12 Pick. R. 436; 10 Bacon's Abr. (Bouv.) 539. It is clear that the testator's daughter was the leading object of his bounty. His main intent was to make a suitable provision for her. He gives the property to her, not for life, with remainder over; but he gives it to her absolutely, "to her and the heirs of her body forever."

In no part of the will is there any expression, which, in my opinion, imposes any restraint upon the daughter's right of alienation. Thus far, the construction, which I give to the will, carries out what I regard the general main intent of the testator. The question then comes up in his mind—suppose the daughter should die, leaving no issue of her body, without having disposed of the property I have given her, what disposition shall be made of the property so remaining? He responds to this

suggestion in the language of the 5th item—"I will and ordain, that all the estate that she may die possessed of, or entitled to, both real and personal, under and by virtue of my will, shall go to and be equally divided between Benjamin Davis, the son, and Lucy Ann Davis," &c. It seems to me very clear that the object of the testator was to vest the property in his daughter, the main object of his bounty, giving to her the absolute right of disposing of it. If, however, she should die without children, or the descendants of them, and without having disposed of the property, but either in possession of it, or entitled to it under the will and out of possession, then that it should go to his nephew and niece, who were the secondary objects of his bounty. In other words, that he did not intend to restrain alienation on the part of his daughter, but intended to confer it, and also intended that the portion remaining undisposed of at her death should go over,—an intent, with respect to the remainder, which I have shown, and which it is well settled, the law will not carry out.—See on this point, Allen & Wife v. White, adm'r, 16 Ala. 181, and cases cited in the opinion. As this view of the case is conclusive of it, I do not deem it necessary to examine the other question, as to the effect of the word, "leaving," in the fifth clause of the will.

In my opinion, the decree of the chancellor should be reversed and the cause remanded; and such being the opinion of a majority of the court, it is accordingly so ordered.

Decree reversed and cause remanded.

PARSONS, J.—I think the limitation over is void, because it is repugnant to the absolute right of alienation of the whole estate, real and personal, which the testator gave to his daughter, the first devisee. He gave the estate which is in controversy, in the first place, to his daughter and to the heirs of her body; and, by a further clause in his will, he provided for the contingency of his daughter's death, *without leaving lawful issue of her body.* In that case he devised *all the estate that she might die possessed of or entitled to, both real and personal. under and by virtue of his will,* over to Benjamin Davis and Lucy Ann Davis, his nephew and niece. The estate thus devised over was not the estate which the testator had devised to his daughter, but it was the estate which she might die possessed of or entitled to under

his will. This, at most, may have been far less than the entire estate devised to the daughter. Had the testator devised ever *so much* of the real and personal estate devised to his daughter, as she should be possessed of or entitled to under the will, at the time of her death, the amount and kind devised over would have been the same, and in that case, the limitation or devise over would have been void, according to the case of The Attorney General v. Hall, Fitz'g. Rep. 314 ; for the addition of the words, " or entitled to" in the case at bar, were merely intended to include the estate to which she might be entitled under the will, at the time of her death, but which she had not then actually received. By the case just cited, it appears that Hall devised his real and personal estate to his son, and to the heirs of his body, and if he should die leaving no heirs of his body living, the testator devised over *so much* of the real and personal estate as his son should be possessed of at his death. The son alienated the real estate by a common recovery, and bequeated the personal estate by will to his wife, and died without issue. The court determined that the limitation over was void, because the absolute ownership had been given to the son, for the estate was given to him and the heirs of his body, and the limitation over was, in effect, of what he should leave unspent, and therefore he had power to dispose of the whole. Lord Hardwicke in Read v. Snell, quotes these words a little different; but I think the difference is immaterial so far as the principle is concerned—see his language in the opinion of brother CHILTON. Speaking of the case of The Attorney General v. Hall, Chancellor Kent says, (16 Johns. R. 585)—" The point of that case then was, that where an estate is given to a man and the heirs of his body, with a power of disposal at his own will and pleasure, it carries with it an absolute ownership, repugnant to any limitation over and destructive of it. The court did not make any distinction between the real and personal estate, and say that the limitation over was good as to the one and void as to the other. They said, generally, that the limitation over in the will was void, because the testator gave the son an unqualified power to spend the whole." In Ide v. Ide, 5 Mass. R. 500, the testator by will gave real and personal estate to his son and to his heirs and assigns forever, and then added, that if the son died without *heirs* (which the court understood in that case to mean *issue*,) the es-

tate which he should *leave* was to be equally divided between two others.   It was determined that the limitation over was void, because, as nothing was limited over but the estate he might leave, his power to dispose of the whole was clearly to be implied, which was inconsistent with the limitation over.   This is very much the same as a limitation over of what the first taker may die possessed of or entitled to under the will, for that is what he leaves, and it is the case before us.   If we look at the provision made for the devisees over in the two cases referred to, rather than to the language employed, they are the same as in this case. In the first case, the testator devised over so much of the estate as the first taker should be possessed of at his death—in the second, the estate which he should *leave*.   In the present case the devise or limitation over is of the estate which she may *die possessed of or entitled to* under the will.   In neither case could the person, claiming under the devise over, insist on more than the first taker had left, even if he could insist upon any; and in all the cases the first taker had clearly the implied power of alienation over the whole estate, and therefore might have left nothing. But there is another case which is in point, Jackson v. Hull, 10 Johns. R. 19.   There the testator gave an estate to his son Moses, his heirs and assigns, and added "in case my said son Moses should die without lawful issue, the said property he died possessed of, I will to my son Young, his lawful issue" &c.   The court held that these words implied a power of alienation by Moses, and consequently an absolute ownership, repugnant to the limitation over to Young and destructive of it.   "The said property he died possessed of" were the descriptive words of what was limited over in the case last cited.   In this case the words of description are "all the estate which she may die possessed of or entitled to under and by virtue of my will."   The words "or entitled to" &c., were intended to embrace that portion of the estate which according to the will she was not to receive for a considerable time and which she might not receive in her lifetime.   But the testator intended to devise it over if she was entitled to it at the time of her death, but not if she had disposed of it.   Hence, there were two portions or descriptions of property limited over—that of which she might die possessed, and that to which she might be entitled at the time of her death, over both of which she had, by necessary implica-

tion, the power and right of alienation, and therefore the absolute property. I am not aware that the rule of law, which defeats a limitation over after a previous devise with an unqualified power of disposal in the first taker, has recently been denied anywhere. It is a rule of property, upon which many titles may depend, and it would be of dangerous tendency now to unsettle it. Neither is it denied, so far as I know, but that this power of disposal may arise by implication, though it should be clear. In each of the three cases, to which I have refered, the implication arose out of the language which the testator employed to describe what he wished to limit over. In each of the cases, as well as in the case before us, the descriptive words of the estate, intended to be limited over, in effect confine it to what the first devisee might die possessed of or entitled to, and the first devisee in each of the cases might, under the implied power, dispose of the whole estate, and so die possessed of or entitled to nothing, and consequently the limitation over is void for uncertainty. But though the rule is generally admitted, as a rule not to be shaken at this day, yet there has been much discussion with regard to its application to cases, among which are the cases of Coates' Appeal, 2 Barr's R. 129, and Smith v. Bell, 6 Pet. R. 68. Those cases turned upon what was supposed to be the intention of the testators. It was thought they did not intend to give to the first divisees the power to alienate absolutely what was limited over. There is no doubt, a power of the kind cannot exist unless so intended by the testator, but whether he intended it or not is to be determined by the will. The whole will is to be looked to, but in my judgment, there is nothing in the will we are considering, which in the smallest degree controls or restrains the power of disposal which is given to the testator's daughter. In the course of his opinion in the case last cited, Chief Justice Marshall observed—" In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him, and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words, and ascertaining the meaning in which the testator used them." It cannot be admitted that there are any ambiguous expressions

or doubtful words in the limitation over which we are considering. Such expressions and words, precisely such in substance, have been settled thrice by courts of acknowledged respectability, and we only follow their lead. But I apprehend that what was so well said by Judge Marshall furnishes strong reasons for applying the rule in this case. The first devisee was the testator's daughter, and it appears by the will that she must have been a very young child, for she was not yet married. She was the first and dearest object of his affections, for it is to be infered that he had no other child. She was about to be deprived of his parental care and left with no other provision than the estate devised. This in name and substance was given to her and hers, but over, so far as not consumed or disposed of by her, to a nephew and niece of the testator, who were certainly not the first objects of his bounty. It is not probable that it was the testator's intention to confine her, come what might, to the profits of the estate, merely that the estate itself might go over to a nephew and niece. Hence, in this case, it is reasonably certain that the testator actually intended to reserve for her the power of disposal. This he had the full power to do, but he had not the legal power to devise over what she might leave, or die possessed of, or entitled to, at the time of her death, under his will, and as a majority of the court is of that opinion, it disposes of the case, without going into those other questions upon this limitation which were argued by the counsel on both sides with unusual learning and ability.